**WELLS et al. v. ROYALL NAT. BANK OF PALESTINE et al. (two cases).**

Nos. 12347, 12348.

Court of Civil Appeals of Texas. Galveston.

May 29, 1952.

Rehearing Denied June 19, 1952.

R. E. Seagler, Houston, and J. D. Pickett, Palestine, for appellants.

John C. Harris, Dallas, Joe N. Davis, E. T. McCain, Jr., E. R. Stanford, Jr., Henry Latimer Jordan, and Luther C. Johnston, Palestine, and Ramey, Calhoun, Marsh & Brelsford, Thos. B. Ramey, Tyler, for appellees.

CODY, Justice.

Appellant, Mrs. Helen Dean Wells, was legally adopted by Miss Sarah E. J. Cart-

mell at the time when Mrs. Wells was about 11 years old, and lived with Miss Cartmell and Miss Cartmell's then husband, until she was about 13 years old, at which time, for reasons of her own Miss Sarah E. J. Cartmell sent Mrs. Wells back to Mrs. Wells' relatives, and thereafter, for the remaining 31 years of Miss Cartmell's life, there was no contact between Mrs. Wells and Miss Cartmell save and except on two occasions, (1) a chance encounter in the City of Palestine in a variety store, and (2) a thirty minute visit by Mrs. Wells in the home of Miss Cartmell in June, 1948, preceding Miss Cartmell's death, which occurred on September 6, 1948.

In cause No. 5260 on the docket of the County Court of Anderson County, styled "In The Estate of Miss Sarah E. J. Cartmell, Deceased", an instrument in writing which had been executed by Miss Cartmell as testatrix on April 9, 1942, was probated by order of September 27, 1948, as the last will and testament of Miss Cartmell. Judge E. V. Swift was named as executor in said will. Shortly before said will was probated Judge Swift as such executor had paid to appellants, Helen Dean Wells and her husband, and to her attorney, the sum of $35,000 and had taken a deed which purported to transfer to the said Swift as such executor all rights which Mrs. Wells might have been entitled to, if any, as the adoptive daughter of Miss Cartmell. In addition, and as a part of the compromise and settlement of the claim of Mrs. Wells to the estate of Miss Cartmell, or any part thereof, Mrs. Helen Dean Wells, joined pro forma by her husband, contested the probate of the will dated April 9, 1942, and an adverse judgment in said contest was rendered against Mrs. Wells and Mrs. Wells, her husband, and her attorney, expressly approved the order dated September 27, 1948, probating the will of April 9, 1942. No appeal was ever had from the judgment rendered so probating said will of April 9, 1942. Thereafter, in the County Court of Anderson County appellant, Mrs. Helen Dean Wells, joined pro forma by her husband, filed an application in cause No. 5352 on the docket of said court wherein and whereby she sought to estab-

lish that on August 10, 1948, Miss Sarah E. J. Cartmell had executed an instrument in writing under the formalities required to establish a valid will, which had been lost or destroyed and which revoked that certain instrument which had been executed by Miss Cartmell as testatrix on April 9, 1942, and which had been probated, as aforesaid, by order of the County Court of Anderson County under date of September 27, 1948, in cause numbered on the docket of said County Court, No. 5260, and styled "In The Estate of Miss Sarah E. J. Cartmell, Deceased", and in said proceeding Mrs. Wells and her husband likewise sought judgment setting aside and cancelling all other orders entered in the probate proceeding No. 5260 aforesaid, save and except the order of December 6, 1948, which appointed the Royall National Bank of Palestine as administrator de bonis non. From an adverse judgment rendered against appellants in cause No. 5352 on April 11, 1950, they perfected their appeal to the District Court of Anderson County, 87th Judicial District, and said appeal bears cause No. 1095 on the docket of the District Court aforesaid.

Appellants brought suit in the 3rd Judicial District Court of Anderson County in cause No. 24,991 against the persons and charitable institutions named as legatees in the aforesaid will of April 9, 1942. Said suit was brought to cancel the aforesaid deed from Mrs. Wells et al. to Judge E. V. Swift, the executor under the 1942 will. Said suit was properly transferred to the 87th Judicial District Court. The allegations in the two different suits presented fundamentally the same issues and for present purposes it is enough to say that said allegations were to the following effect:

That Mrs. Wells was the sole surviving heir of Miss Cartmell and as such was entitled to inherit the estate left by her (which is variously valued at between $650,000 and $1,000,000), insofar as same was not devised by will, and that Mrs. Wells, her husband, and her attorney were induced to enter the agreed judgment whereby the will of 1942 was probated, and to execute the aforesaid deed to Judge

Swift, upon the assurance by Judge Swift that said will was the last will executed by Miss Cartmell.

That appellant, Mrs. Wells, her husband, and attorney, exercised due diligence but they only learned some 6 months later that Miss Cartmell had executed a will while in the hospital on August 10, 1948, the only known terms of which were that the same voided all of her former wills.

(At this point it must be stated that Judge Swift died exactly 2 months after the death of Miss Cartmell and that appellee Royall National Bank of Palestine was appointed administrator, de bonis non, with the will of 1942 annexed.)

By consent of all parties the issues made by the pleadings and the evidence in said two causes were contemporaneously tried and submitted to the jury upon the same set of special issues. A separate judgment was rendered in each of said 2 causes and 2 separate transcripts have been brought up but only a single statement of facts was brought up, which incidentally consists of 4 large volumes. The judgment rendered in the proceeding brought to establish the alleged revoking instrument and which was the subject matter of cause No. 5352 in the County Court of Anderson County and which on appeal was cause No. 1095 in the District Court of Anderson County is the appeal which is numbered No. 12,347 on the docket of this Court. Whereas the suit to cancel the aforesaid deed and which was cause No. 24,991 in the District Court, is appeal No. 12,348 on the docket of this Court.

We deem it unnecessary at this point to state any further procedures had save and except that adverse judgments were rendered against the appellants upon the answers of the jury to the following special issues:

In answer to special issue No. 1, the jury found that Miss Sarah E. J. Cartmell did not sign a statement in writing on or about August 10, 1948, at the Palestine Sanitarium, and, conditioned upon said answer being "Miss Sarah E. J. Cartmell did sign a statement in writing", the jury were instructed to answer special issue No. 2. Conditioned upon the answer to special issue No. 2, the jury were requested to answer special issues Nos. 3, 4, 5, 6, 7 and 8. Since the jury did not answer special issue No. 1 to the effect that "Miss Sarah E. J. Cartmell did sign a statement in writing", they left unanswered special issues Nos. 2 to 8, inclusive.

The jury answered special issue No. 9 to the effect that Miss Sarah E. J. Cartmell did not have testamentary capacity, as the term is defined in the charge, on or about August 10, 1948, at the time it was claimed by appellants that she signed a statement in writing at the Palestine Sanitarium. (The basis upon which the appellants sought to set aside their action in compromising their claims was as stated above, that Judge Swift had told appellants in his office that the 1942 will was the last will of Miss Cartmell and that it had not been revoked.)

In answer to special issue No. 10, the jury answered to the effect that Judge Swift did state, at the time and place alleged, that the 1942 will was the last will of Miss Cartmell, and had not been revoked. Conditioned upon such answer, there was submitted to the jury a special issue asking if the statement so made by Judge Swift was false and untrue, and the jury answered that said statement so made by Judge Swift was not false and untrue.

Special Issue No. 12 was likewise submitted to the jury conditionally, and the jury found that appellants executed the settlement agreement as well as the deed and accepted the $35,000 settlement, believing and relying upon E. V. Swift's said statement that "The 1942 will was the last will of Miss Sarah Cartmell and that it had not been revoked."

Conditioned upon such answer to special issue No. 12, the jury were asked special issue No. 13, which they answered that Judge Swift's said statement was a material inducement to appellants to agree to the judgment probating Miss Cartmell's 1942 will and to execute the agreement and deed and accept the $35,000.

In answer to special issue No. 14, the jury found that the appellants had exercised reasonable diligence, etc. The other

special issues being conditioned, were, under such contingent instructions, left unanswered by the jury.

It is provided by R.C.S. art. 8285 that no will in writing, etc. shall be revoked, except by a subsequent will, codicil or declaration in writing "executed with like formalities * * *." In order, therefore, to establish that Miss Cartmell had revoked the 1942 will, the burden was on appellants to show at least that she had executed an instrument in writing under the formalities necessary to make a valid will. By force of R.C.S. art. 3330, where a will has been lost or destroyed, so much of the contents of said lost will, so far as they are known, can be established.

In order to revoke the will of 1942, the appellants had the burden of establishing that Miss Cartmell executed a written instrument under the formalities required to establish a valid will; and they additionally alleged and sought to prove up that said instrument was lost, and that it expressly provided for the revocation of previous wills. As indicated above, the jury found, in answer to special issue No. 1, that Miss Cartmell "did not sign a statement in writing" at the Palestine Sanitarium on or about the 10th of August, 1948.

Appellants produced two witnesses who testified that Miss Cartmell did execute a written will on August 10, 1948, and that they witnessed said will as subscribing witnesses. Had the jury believed the testimony of said witnesses, the appellants would then have had the further burden of proving that Miss Cartmell was of sound mind and disposing memory. It is appellants' contention that the jury's answer to special issue No. 1 is at least against the great preponderance of the evidence.

The witnesses produced by appellants, as being the subscribing witnesses to a will executed by Miss Cartmell on or about August 10, 1948, at the hospital, consisted of Miss Kuban, a nurse, and of Herman Hollis, a Negro who had been the servant of Miss Cartmell, and of her brother who predeceased her, for 25 years before her death.

For present purposes it is sufficient to say that the substance of Miss Kuban's testimony was:

That while Miss Cartmell was in the hospital she requested Miss Kuban to phone Hollis to bring her some important papers, that Hollis would know what papers were meant. That Hollis brought the papers on August 10, 1948, in the morning, that "Miss Sarah took and opened them and asked me if I would mind signing them and I didn't want to. I hesitate on signing my name for any patient. She said it wouldn't hurt me and she wouldn't tell anybody and she would like for me to sign them because she thought so much of me and all that. She said they were for her protection and that they were pertaining to her will; that she had a will made but she hadn't left anything to her nephew and she would like to leave him something." That she was talking in the presence of Hollis and wanted both Miss Kuban and Hollis to sign the papers. That after some argument Miss Kuban signed the paper, and that under Miss Kuban's name, Hollis signed. That she saw Miss Cartmell sign her name, as did Hollis. That he also signed the paper in the presence of Miss Cartmell and Miss Kuban. Miss Kuban further testified that she glanced over Miss Cartmell's signature, and saw written on the paper "I want to void my previous will." That the papers consisted of two sheets, and was hand-written in pen and ink. That Miss Cartmell told Miss Kuban to turn the paper over to Judge Swift. That when Judge Swift returned to Palestine, and came out to the hospital, she brought the paper out and handed it to him in the hall, and that he did not go back into the room; that he did not read the paper when it was handed to him. That he said "This isn't any good, she has a recorded will in 1945 and don't talk to her about the will any more."

Miss Kuban further testified that Miss Cartmell told her to phone to Mr. Henry Jordan, a lawyer, to come out to draw a will for Miss Cartmell; that Miss Kuban did so phone Mr. Jordan, but he never came, etc.

Coming now to Hollis,—he testified that on one of Judge Swift's visits to Miss Cartmell while she was sick at home in July, 1948, she told him that she wanted some changes in her will, but that Judge Swift told her that was not the right time to make the changes. Later, on Miss Cartnell's in-

sistence, Judge Swift came again out to Miss Cartmell's home, and that Hollis heard her tell Judge Swift that she wanted some changes made in her will, and that Judge Swift protested against any changes being made. That Miss Cartmell told Hollis to bring a tablet; that Hollis then brought a large tablet and gave it to Judge Swift; that Hollis went out of the room to work, but he could see in the room; that he saw Judge Swift sitting by the side of the bed in which Miss Cartmell was lying, and that Miss Cartmell was talking and Judge Swift was writing on the tablet. That in response to Judge Swift's request, Hollis brought him an envelope, and that Judge Swift folded the paper, put it in the envelope, and gave it to Miss Cartmell, who gave it to Hollis, saying "This is my important papers. I want you to put them in the drawer."

Hollis further testified, among other things, that Miss Kuban phoned him that Miss Cartmell wanted him to bring her the important papers she had given him when she was at home, which Hollis testified he did. That he gave them to Miss Cartmell in the presence of Miss Kuban, and that Miss Cartmell opened the papers, which were the papers written by Judge Swift. That Miss Cartmell then said she wanted Hollis and Miss Kuban to witness the papers. That she said "This is my will and I want you to witness it, and this is to revoke all my previous wills." That Miss Cartmell signed it, then Miss Kuban signed it, then Hollis signed,—all in the presence of each other.

Hollis further testified that after Judge Swift had returned from Big Spring (where he had undergone a medical examination by his son, who is a doctor), and on the first visit made to Judge Swift by Hollis after such return, that Judge Swift mentioned the instrument. That Judge Swift told Hollis that it would not stand, that Miss Cartmell was too sick, and that it wasn't signed by the proper authorities; that he asked Hollis if he, Hollis, had witnessed the instrument, and that he, Hollis, said that he had. That Hollis told 'Judge Swift who were the witnesses. That as to the instrument which Hollis had signed out at the hospital, that Hollis was not to talk about it at all, not to mention it to any one. That Judge Swift told this to Hollis on several occasions. That most of the occasions were after Miss Cartmell's death. That Judge Swift never did tell him what he had done with that paper.

■ Under the court's charge, if the jury did not believe the testimony of Miss Kuban and Hollis, it was the duty of the jury to answer special issue No. 1 as they did answer it. Both Miss Kuban and Hollis freely admitted on the trial that they had on various occasions made previous statements to various named persons which were inconsistent with, and contrary to, their testimony given upon the trial relative to the matter inquired about in special issue No. 1. It was within the province of the jury to disbelieve the impeached testimony of the witnesses. Upon such disbelief, the jury properly answered said special issue.

■ In answer to special issue No. 11, the jury found that Judge Swift's statement to Mr. and Mrs. Wells, made on September 14, 1948, that "the 1942 will was the last will of Miss Sarah E. J. Cartmell", was not false and untrue. Since the jury disbelieved the testimony of Miss Kuban and Hollis, as evidenced by the Jury's answer to special issue No. 1, they were acting within their province in answering special issue No. 11 as they did. And said answer finds ample support in the evidence.

■ The jury answered special issue No. 9, that Miss Cartmell did not have testamentary capacity on or about August 10, 1948. There was much evidence admitted by the court bearing on this issue, given both by medical experts and by non-expert witnesses. Appellants have reserved objections to the admission of the expert testimony on said issue. The burden was on appellants to establish that Miss Cartmell possessed testamentary capacity at the time they alleged that she executed a will which revoked the 1942 will. If the finding by the jury that no instrument of August 10, 1948, was signed by Miss Cartmell, is binding upon the court, we fail to see that any good purpose would be served in discussing the evidence bearing on special issue No. 9, or discussing appel-

lants' objections to the admissibility thereof. The evidence was to the effect that Miss Cartmell was either 81 or 79 at the time of her death. It was undisputed that she was the victim of various serious maladies at the time she was admitted to the hospital on August 6, 1948. Had the jury answered special issue No. 9 to the effect that Miss Cartmell was of testamentary capacity, it would appear that upon motion of appellees, the court would have been compelled to disregard such answer, and to render the judgment which was rendered.

By force of art. 8285, neither the will of 1942, nor any clause thereof, nor any devise therein, could be revoked, "except by a subsequent will, codicil or declaration in writing, executed with like formalities * * *." By force of said statute, one of the elements necessary to the revocation of an existing written will, or of any clause thereof, or of any devise therein, is that the testator shall execute an instrument in writing with the formalities necessary for a valid will. Special issue No. 1 reads: "Do you find from a preponderance of the evidence that on or about the 10th day of August, A. D. 1948, Miss Sarah E. J. Cartmell signed a statement in writing at the Palestine Sanitarium?"

"Answer: 'Miss Sarah E. J. Cartmell did sign a statement in writing' or 'Miss Sarah E. J. Cartmell did not sign a statement in writing.'"

The jury answered: "Miss Sarah E. J. Cartmell did not sign a statement in writing."

"If you have answered Special Issue No. 1, 'Miss Sarah E. J. Cartmell did sign a statement in writing,' and only in that event, then answer:

"Special Issue No. 2

"Do you find from a preponderance of the evidence that such statement in writing, if you have found, contained words to the effect that she voided her previous will?"

"Answer: 'Said statement in writing did contain words to the effect that she voided her previous will' or 'said statement in writing did not contain words to the effect that she voided her previous will.'"

The jury, following the court's instruction, did not answer special issue No. 2.

We are of the opinion that the separate submission of special issues Nos. 1 and 2 was not a splitting of a single ultimate issue, but that special issue No. 1 was itself an ultimate issue. It was necessary for appellants to obtain a favorable answer to special issue No. 1, in order to be placed in a situation where they could apply to the probate court and to have the alleged lost will probated under art. 3330, and prove so much of the contents thereof as it was alleged were known. Special issue No. 2 was, we take it, submitted as an ultimate issue under the pleadings alleging so much of the contents as appellants alleged were known, and under art. 3330.

We have carefully examined the 19 points urged by appellants, and have concluded that no reversible error was committed by the trial court. We deem it unnecessary to pass upon appellees' cross-points. We have concluded that the judgments in the respective appeals must be affirmed.