Albert A. LOWERY, Appellant,

v.

Nancy Adele SAUNDERS and Bill Saunders, Appellees.

No. 04–81–00348–CV.

Court of Appeals of Texas, San Antonio.

Jan. 11, 1984.

Rehearing Denied Feb. 6, 1984.

228

Stanley E. Crawford, Jr., Cox & Smith, San Antonio, for appellant.

Don McManus, San Antonio, for appellees.

Before CADENA, C.J., and ESQUIVEL and CANTU, JJ.

## OPINION

CANTU, Justice.

 This is an appeal from an order admitting to probate the April 7, 1976, will and the April 19, 1977, codicil to the will of Bessie Cooke Cato. Appellees submitted these two documents for probate, while appellant tendered a purported will dated June 18, 1979.[1] The trial court, in refusing to admit the 1979 instrument to probate, ruled that the testatrix lacked testamentary capacity at the time of its execution and that appellant had exercised undue influence over the testatrix.[2]

The testatrix had no children of her own and all of her siblings had since passed away, thus all of her heirs were either nephews, nieces, grand-nephews, or grand-nieces. Appellee, Nancy Adele Saunders, is the testatrix's grand-niece, while appellant is her nephew. The 1976 will appointed appellees as co-independent executors and devised or bequeathed to appellee, Nancy Saunders, the testatrix's San Antonio home and all its contents, and all but one of the testatrix's nineteen mineral interests in Texas and Oklahoma. Appellant received no property under the 1976 will. However, appellant's daughter was devised a parcel of real estate in Bexar County and a leasehold interest in another piece of property.

The will offered for probate by appellant sought to appoint him as independent executor of the estate and devised or bequeathed to him all of testatrix's property except for the house in San Antonio and the furnishings therein which were devised or bequeathed to appellant's daughter. Appellees were not mentioned in this later will.

A chronological summary of the events leading up to the will contests is deemed appropriate for a proper disposition of appellant's contentions.

On April 19, 1978, testatrix executed a warranty deed whereby she conveyed her San Antonio home to appellees while reserving for herself the full possession, benefit and use of the home for and during her lifetime.

On the same day, testatrix contracted and agreed with appellees that she would not change the provisions of her will dated April 7, 1976, insofar as it applied to any and all dispositions made for the benefit of appellee, Nancy Adele Saunders.

On or about July 28, 1978, testatrix filed a petition in the district court of Bexar County seeking to have the agreement and warranty deed executed on April 19, 1978, set aside. Following a jury trial, the trial court, on May 4, 1979, entered its judgment based on the verdict of the jury, affirming and holding valid the contractual agreement and the warranty deed dated April 19, 1978.

On June 18, 1979, testatrix executed the will sponsored by appellant which eliminated appellee, Nancy Adele Saunders, as a devisee and legatee.

On January 9, 1980 testatrix died in San Antonio and the following day appellees filed their application to probate testatrix's will dated April 7, 1976, and codicil dated April 19, 1977.

---

1. Originally appellant intended to have admitted into probate either the June 18, 1979 will or wills executed subsequent to April 19, 1976 but prior to the June 18, 1979 will. These wills were dated April 25, 1979, November 21, 1978 and a codicil thereto dated January 22, 1979. Appellant never offered these other wills and codicil into evidence but abandoned any claim as to their validity.

2. The holding of the trial court that the testatrix lacked testamentary capacity and that she was unduly influenced are in conflict.

Testamentary incapacity implies want of intelligent mental power, while undue influence implies existence of testamentary capacity subjected to and controlled by dominant influence or power. *Rothermel v. Duncan*, 369 S.W.2d 917 (Tex.1963); *Sebesta v. Stavinoha*, 590 S.W.2d 714 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). The existence of either will cause the will to be void. *Michalak v. Dzierzanowski*, 270 S.W.2d 276 (Tex.Civ.App.—Austin 1954, no writ).

One week later, on January 17, 1980, appellant filed his application to probate the will dated June 18, 1979. Appellant also opposed the admission to probate of the will dated April 7, 1976 with codicil dated April 19, 1977, contending that the will dated June 18, 1979 expressly revoked the earlier will and codicil.

Appellees opposed the June 18, 1979 will contending that it, along with other wills executed between April 19, 1977 and June 18, 1979, was the product of undue influence by appellant and others and that testatrix lacked testamentary capacity to make these later wills.

Both appellant and appellees sought the issuance of letters testamentary to themselves as independent executors of the estate in accordance with the terms of the wills for which each respectively sought admission to probate.

The contest was tried to the court without intervention of a jury.

In opposing the admission of the 1979 will to probate, appellees introduced into evidence the testatrix's testimony from the April 9, 1979, trial which resulted in upholding the contractual agreement and warranty deed. Appellees asserted that the testatrix had granted them the property because it was understood that they were going to receive it eventually by virtue of the April 7, 1976 will.

Testatrix was a benevolent elderly lady in her nineties. As a result of her benevolence, testatrix found herself indebted to the Frost National Bank of San Antonio on notes totalling nine thousand dollars. The notes were in default and overdue when appellees agreed with testatrix to provide her with ten thousand dollars cash for payment of the outstanding notes, and with an additional five thousand dollars to be provided in periodic future advancements as needed for testatrix's care and maintenance.

In return for appellees' gift of ten thousand dollars and their promise to pay five thousand dollars in the future, testatrix agreed to presently transfer her home to them and further agreed not to change her will in the future. Appellees alleged that the testatrix made the 1979 will leaving them nothing as a result of the law-suit.

Appellant has favored us with thirty-six points of error which can be grouped into six basic contentions.

Points of error 1, 2, 4, 6, 8 and 10 assert that the trial court's conclusion and supportive findings that the testatrix did not have testamentary capacity at the time she executed the will dated June 18, 1979 are not supported by legally sufficient evidence. Points of error 3, 5, 7, 9, and 11 all contend that the same conclusion and findings on lack of testamentary capacity are unsupported by factually sufficient evidence.

■ In addressing a legal sufficiency challenge, this court must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary.

■ On the other hand, a factual sufficiency challenge requires this court to consider all of the evidence. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

At the request of appellant, the trial court entered its findings of fact and conclusions of law as follows:

1. On June 18, 1979, BESSIE COOKE CATO, Deceased, executed her purported Last Will and Testament.

2. The purported Last Will and Testament executed by BESSIE COOKE CATO, Deceased, on June 18, 1979, contained a self-proving affidavit as provided for in Section 59 of the Texas Probate Code.

3. BESSIE COOKE CATO, Deceased, died on January 9, 1980.

4. At the time of BESSIE COOKE CATO, Deceased's death on January 9, 1980, she was a domiciliary in Bexar County, Texas.

5. The purported Will of BESSIE COOKE CATO, Deceased, dated June 18, 1979, was the last instrument of any kind

executed by BESSIE COOKE CATO with respect to the devise of her estate.

6. On June 18, 1979, when BESSIE COOKE CATO, Deceased, executed her purported Last Will and Testament, she did not understand the business in which she was engaged.

7. On June 18, 1979, when BESSIE COOKE CATO executed her purported Last Will and Testament, she did not understand the effect of her act in making the purported Will.

8. On June 18, 1979, when BESSIE COOKE CATO, Deceased, executed her purported Last Will and Testament, she did not know the nature and extent of her property.

9. On June 8, [sic] 1979, when BESSIE COOKE CATO, Deceased, executed her purported Last Will and Testament, she did not have memory sufficient to collect in her mind the elements of the business about to be transacted and to hold those elements long enough to preceive [sic] their obvious relation to each other and be able to form a reasonable judgment as to them.

10. On April 19, 1978, BESSIE COOKE CATO, Deceased, for adequate consideration, executed a Warranty Deed whereby she conveyed her home at 101 Caladium Drive, San Antonio, Texas, to NANCY ADELE SAUNDERS and husband, WILLIAM SAUNDERS, reserving for herself (BESSIE COOKE CATO), the full possession, benefit and use of the home conveyed, as well as the rents, revenues and profits thereof, for and during her life.

11. On April 19, 1978, BESSIE COOKE CATO, Deceased, by a duly executed contractual agreement, for adequate consideration, contracted and agreed with NANCY ADELE SAUNDERS and husband, WILLIAM SAUNDERS, that she would not change the provisions of her will dated April 7, 1976, insofar as it applied to any and all bequests made to and for the benefit of NANCY ADELE SAUNDERS.

12. Subsequent to April 19, 1978, BESSIE COOKE CATO, Deceased, falsely came to believe, without any rational basis in fact, that NANCY ADELE SAUNDERS and husband, WILLIAM SAUNDERS, wanted to and had taken steps to take her property away from her.

13. Prior to April 19, 1978, BESSIE COOKE CATO, Deceased, had, by various wills, devised a substantial portion of her estate to NANCY ADELE SAUNDERS.

14. The Will of BESSIE COOKE CATO, Deceased, dated June 18, 1979, eliminated NANCY ADELE SAUNDERS as an object of BESSIE COOKE CATO'S bounty.

15. On June 18, 1979, when BESSIE COOKE CATO, Deceased, executed her purported Last Will and Testament, she believed that NANCY ADELE SAUNDERS and husband, WILLIAM SAUNDERS, wanted to and had taken steps to take her property away from her, which belief constituted a state of supposed facts which no rational person would believe.

16. On June 18, 1979, when BESSIE COOKE CATO, Deceased, executed her purported Last Will and Testament, the state of supposed facts believed by BESSIE COOKE CATO, Deceased, influenced her to make a disposition of her property different from that which she otherwise would have made.

17. On June 18, 1979, when BESSIE COOKE CATO, Deceased, executed her purported Last Will and Testament, she was unduly influenced to do so by ALBERT A. LOWERY.

18. The Will of BESSIE COOKE CATO, Deceased, dated April 7, 1976, and the Codicil to that Will dated April 19, 1977, was self-proved in accordance with Section 59 of the Texas Probate Code.

19. The Will of BESSIE COOKE CATO, Deceased, dated April 7, 1976, and the Codicil to that Will dated April

19, 1977, was not revoked by BESSIE COOKE CATO, Deceased.

20. Necessary proof required for the probate of the Will of BESSIE COOKE CATO, Deceased, dated April 7, 1976, and the Codicil to that Will dated April 19, 1977, has been made.

## CONCLUSIONS OF LAW

1. BESSIE COOKE CATO, Deceased, did not have testamentary capacity at the time she executed her purported Will on June 18, 1979, and said Will is not entitled to probate.

2. At the time BESSIE COOKE CATO, Deceased, executed her purported Will on June 18, 1979, she was acting under undue influence, and said Will is not entitled to probate.

3. The Will of BESSIE COOKE CATO, Deceased, dated April 7, 1976, and the Codicil to that Will dated April 19, 1977, is entitled to probate.

■ Testamentary capacity means sufficient mental ability, at the time of the execution of the will, to understand the business in which the testatrix is engaged, the effect of her act in making the will, and the general nature and extent of her property. Moreover, the testatrix must also be able to know her next of kin and the natural objects of her bounty. She must have sufficient memory to collect in her mind the elements of the business to be transacted and to hold them long enough to at least perceive their obvious relation to each other, and to be able to form a reasonable judgment as to them. *Prather v. McClelland,* 76 Tex. 574, 13 S.W. 543 (1890); *Oliver v. Williams,* 381 S.W.2d 703 (Tex.Civ. App.—Corpus Christi 1964, no writ).

■ In a will contest, the burden of proof is on the proponent to prove that the testatrix had testamentary capacity. *Seigler v. Seigler,* 391 S.W.2d 403 (Tex.1965).

Testatrix executed her last will on June 18, 1979, in the presence of her attorney James Bass, the attorney that prepared the will.[3]

Bass testified that he explained the will to her paragraph by paragraph to make sure that she understood the significance and effect of her action. Bass believed that testatrix understood who the members of her family were and what their relationship was to her, and the nature and extent of her property. He further expressed the opinion that her memory and understanding were sufficient to enable her to make a valid will.

Bass further testified that the testatrix fully intended to exclude the appellees from her will because she was angry and upset about an earlier transaction with them in which she had lost all of her rights and ownership interest in her homestead, except for a retained life estate.

Because a question of testatrix's competency arose in prior litigation and because of her advanced age, Bass made arrangements for a psychiatrist to examine her before the will was prepared and executed.

Dr. James M. Bailey examined testatrix on May 22, 1979 for one hour and likely on the date the will was executed. On this second occasion Bailey's affidavit was attached to the will of June 18, 1979.[4] Bailey testified that testatrix understood the effect and significance of making a will, and that she defined this significance for him. According to Bailey, she was able to generally name her relatives and the cities of their residences. He testified that the tes-

---

**3.** Bass had been representing testatrix for about three months at the time the June 18, 1979 will was executed. His representation of testatrix arose as a result of a lawsuit filed by testatrix to set aside the deed transferring her homestead property to appellees.

**4.** The affidavit reads:
"My name is James M. Bailey. I am a medical doctor duly licensed by the State of Texas

specializing in psychiatry. I have this day examined the Testatrix, Bessie Cooke Cato, and have determined that she is of sufficient mental capacity to execute this will and she knows the extent and nature of her estate and those entitled to the bounty of same. She further understands the significance of this will and has stated to me that she is making same freely of her own free act of deed and without duress."

tatrix had been handling her own business affairs and paying her own bills. Bailey concluded that the testatrix was capable of writing her own will or signing one prepared by someone else at the times he examined her.

On cross-examination of Dr. Bailey and through rebuttal testimony, appellees were able to demonstrate that the testatrix was not knowledgeable about the nature and extent of her property at the time she saw Dr. Bailey and attorney Bass.

Testatrix had described to Dr. Bailey her house containing a great deal of furniture that she cherished, including a piano. She also alluded to a small business from which she drew a monthly income and ownership in stocks and bonds.

Later evidence revealed that the house and furniture had already been conveyed to appellees and the conveyance had been confirmed by court order following litigation. The small business that she claimed to own had been sold to a third party many months prior to the time she saw Dr. Bailey, as had the piano.

No evidence was adduced indicating that testatrix ever owned an interest in stocks and bonds.

Dr. Bailey stated that testatrix told him she had three nieces, one nephew and one grand-niece. In fact, testatrix had two grand-nieces, two nephews, and a grand-nephew.

■ We believe there is sufficient evidence creating a fact issue as to whether testatrix recognized the full extent of her property and the objects of her bounty.

■ In a non-jury trial, the judge is the trier of the facts and of the law, *Industrial Accident Board v. Lance*, 556 S.W.2d 101 (Tex.Civ.App.—Amarillo 1977, no writ), and as such is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *Niagara Fire Insurance Co. v. Numismatic Co. of Fort Worth*, 380 S.W.2d 830 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.).

We hold that the evidence is both legally and factually sufficient to support the trial court's findings and conclusion that the testatrix did not have testamentary capacity at the time she executed the June 18, 1979, will. Appellant's points of error 1 through 11 are overruled. *See Garza v. Alviar, supra; In re King's Estate, supra.*

Appellant's points of error numbers 12 through 19 all challenge the trial court's findings and conclusion that the testatrix was acting under undue influence at the time she executed her will dated June 18, 1979.

■ Since undue influence assumes the existence of testamentary capacity, *Rothermel v. Duncan*, 369 S.W.2d 917 (Tex.1963); *Sebesta v. Stavinoha*, 590 S.W.2d 714 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.), and since we uphold the trial court's finding that the testatrix did not have testamentary capacity, a consideration of appellant's points of error 12 through 19 is unnecessary. Nevertheless, evidence of impaired mentality not amounting to testamentary incapacity may afford an opportunity for the exercise of undue influence, *Clark v. Briley*, 193 S.W. 419 (Tex.Civ.App.—Fort Worth 1916, writ ref'd). If, however, we are wrong about testatrix's lack of testamentary capacity, we are, nevertheless, convinced that there is evidence showing that an impaired mental condition existed which made likely through influence of another the destruction of testatrix's free agency and free will and the substitution of the other's will so as to cause the testatrix to do what she otherwise would not have done but for such other's influence.

Points of error 12, 13, 14, 16, 17 and 18 contend that the court's findings and conclusion on undue influence are not supported by legally sufficient evidence. Points 15 and 19 assert that the findings and conclusion are not supported by factually sufficient evidence and that they are against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

We review these contentions applying the same standards previously stated. *Garza v. Alviar, supra, In Re King's Estate, supra.*

■ An instrument claimed to be a will may not be admitted to probate where it is established that the writing was not the voluntary act of the testator but was procured by the intervention of someone else against the will of the testator. *See Moore v. Horne,* 136 S.W.2d 638 (Tex.Civ.App.—Austin 1940, writ dism'd judgmt cor.).

Undue influence has been defined further as that dominion acquired by one person over the mind of another, which prevents the latter from exercising his discretion, which destroys his free agency, and which compels him to do something against his will from fear, or from a desire of peace, or from some feeling that he is unable to resist. *Black v. Black,* 240 S.W.2d 458 (Tex.Civ.App.—Amarillo 1951, writ ref'd n.r.e.).

■ The undue influence must have been exercised at the time the will was executed. *Mason v. Mason,* 369 S.W.2d 829 (Tex.Civ.App.—Austin 1963, writ ref'd n.r.e.).

■ The burden of proving that undue influence was exercised on the testatrix rests on the party opposing or contesting probate of the will. *Chapal v. Vela,* 461 S.W.2d 466 (Tex.Civ.App.—Corpus Christi 1970, no writ); *Garza v. Garza,* 390 S.W.2d 45 (Tex.Civ.App.—San Antonio 1965, writ ref'd n.r.e.). Circumstantial evidence is admissible to prove undue influence and it is proper to receive evidence of all relevant matters that occurred within a reasonable time before or after execution of the will being offered as tending to indicate the existence of undue influence at the time of execution. *Maul v. Williams,* 88 S.W.2d 1087 (Tex.Civ.App.—San Antonio 1935, no writ); *Moos v. First State Bank of Uvalde,* 60 S.W.2d 888 (Tex.Civ.App.—Beaumont 1933, writ dism'd).

■ All of the circumstances shown by the evidence should be considered, and even though none of the circumstances standing alone would be sufficient to show undue influence, if when considered together they produce in the ordinary mind a reasonable belief that undue influence was exerted in the procurement of the will, they are sufficient to sustain this conclusion. *Barksdale v. Dobbins,* 141 S.W.2d 1035 (Tex.Civ.App.—Texarkana 1940, writ ref'd).

■ In ascertaining whether, in a particular situation, undue influence has been exercised, all material facts may be considered, including the circumstances attending execution of the instrument; the relationship existing between the maker and the beneficiaries and others who might be expected to be recipients of bounty; the motive, character, and conduct of those benefited by the instrument, participation by the beneficiary in preparation or execution of the instrument; the words and acts of all attending parties; the physical and mental condition of the maker at the time of execution of the instrument; his age, weakness, infirmity, and dependency on or subjection to the control of the beneficiary; and the improvidence of the transaction by reason of unjust, unreasonable, or unnatural disposition. 61 TEX.JUR.2d *Wills,* § 76 (1964); *See also Click v. Sutton,* 438 S.W.2d 610 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.).

Appellant argues that there is evidence in the record that supports the conclusion that testatrix was rationally motivated to refuse to devise or bequeath any property to appellees. He points to two instances of litigation between testatrix and appellees involving the transfer of her homestead.

The June 18, 1979 will alters the scheme of previous testamentary dispositions by removing appellees as objects of testatrix's bounty and substituting appellant in their place. Appellant views the change as consistent with testatrix' expressed anger towards appellees as a result of the bitter litigation.

Attorney Bass testified that he had been instructed on how to draft the will by appellant, that appellant was present when the will was executed and that he had never seen testatrix alone.

Dr. Bailey testified that appellant had paid him for his services. Appellant testified that he had access to testatrix's house and had a key to the house. He further testified that he lived with her upon occasion and had spent various periods of time in her house with her prior to her death.

Testatrix's previous attorney, William Remy, testified that he had represented testatrix for a number of years and had prepared prior wills and codicils for her. In describing events leading up to his dismissal as testatrix's attorney, he stated that appellant often accompanied testatrix to his office and that appellant usually did most of the talking.

The will actually admitted to probate and dated April 7, 1976 was prepared by attorney Remy in accordance with her instructions. The will contains the following provision:

> ... should my nephew, Albert Lowery, or my niece, Evelyn Cobble, institute any proceeding to contest the probate or validity of this will or any provision hereof, then all benefits to Evelyn Cobble and Steven Walton Lowery, and the descendants of such persons shall be revoked ...

There is no contention by appellant that testatrix was not competent when this will was executed, rather he takes the position that it was revoked by subsequent wills including the one dated June 18, 1979.

We think that the evidence is sufficient to support the trial court's findings and conclusion that testatrix was acting under undue influence at the time she executed the will dated June 18, 1979 and that appellant was exerting undue influence.

■ We think that a finding of undue influence is appropriate where it is shown that the testatrix is laboring under an impaired mental condition not amounting to actual testamentary incapacity at the time of the will's execution. The evidence is legally and factually sufficient to support the trial court's holding and is not so against the great weight of the evidence as to be manifestly wrong and unjust. Appel-

lant's points of error 12 through 19 are overruled.

Appellant's point of error number 20 alleges that the trial court erred in admitting the prior testimony of the testatrix given in open court in the previous litigation in which she attempted unsuccessfully to set aside the warranty deed conveying her home to appellees.

During trial, the trial court permitted appellees to read into evidence some 68 pages of former testimony of testatrix developed at the previously mentioned trial. Over appellant's objection that it was "prejudicial and improper and irrelevant," the testimony was introduced and admitted for the purpose of showing the state of mind of the testatrix and her ability to recognize her estate.

The complained of testimony reveals that testatrix's testimony was incoherent and at times amounted to ravings. Much of her testimony was unresponsive and displayed thought disorder. A portion of her testimony reveals her inability to comprehend the nature of the proceedings and that she had instigated them.

The testimony was developed barely two months prior to the execution of her June 18, 1979 will.

■ Declarations which because of their apparently disordered, unreasonable and abnormal character would be unlikely to be prompted by a sound mind are admissible to prove want of mental capacity. *McIntosh v. Moore*, 22 Tex.Civ.App. 22, 53 S.W. 611 (1899, no writ).

■ Declarations rational on their face are admitted along with proof that they are, in fact untrue, to show a decedent's mental shortcomings. Thus, an erroneous declaration that certain property is owned or not owned is admissible as evidence of a mental state not meeting the requirements for making a will. *See Sebesta v. Stavinoha*, 590 S.W.2d at 716; *McNaley v. Sealy*, 122 S.W.2d 330 (Tex.Civ.App.—Austin 1938, writ dism'd).

Appellant recognizes the rule that the contestant of a will may introduce evidence

of lack of testamentary capacity either before or after the day on which the will in question is executed, provided the condition or conditions which caused the incompetency at earlier or later times is shown to have persisted and been in effect at the time when the will was executed. *Lee v. Lee,* 424 S.W.2d 609 (Tex.1968).

He argues however, that appellees presented no evidence from a medical source which would indicate that testatrix's mental condition continued through the day on which she executed her last will.

■■■ We disagree. The testimony of Dr. Bailey, who drew his conclusions from interviews with the testatrix as late as the date of execution of the will indicates that declarations appearing to be rational on their face, in fact, had no basis.

Testatrix was unable to recognize the extent and nature of her estate, and the natural objects of her bounty, although she was able to relate information regarding both, albeit incomplete or erroneous. The testimony of Dr. Bailey furnishes support for the conclusion that testatrix's condition persisted up to June 18, 1979, the date she executed her last will.

The testimony complained of was relevant and competent as it touched upon testatrix's mental condition. It was competent evidence about her mental condition and mental ability or lack of it that did not involve legal definitions, legal tests, or pure questions of law and was, therefore, admissible. *Carr v. Radkey,* 393 S.W.2d 806 (Tex.1965). Appellant's point of error number 20 is overruled.

Point of error number 21 complains of the trial court's exclusion, because of the Dead Man's Statute, of appellant's proffered testimony seeking to show the state and condition of testatrix's mind during the already alluded to prior litigation.

Article 3716 of the Texas Revised Civil Statutes, commonly referred to as the Dead Man's Statute provides in pertinent part:

In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party.

During the course of the trial, appellant was called to testify and was questioned concerning the occasions on which he stayed in the testatrix's home, his familiarity with her business dealings, the extent of her debts and assets, loan transactions, preparation of deeds and various other things of which he may or may not have had personal knowledge.

We have examined the record and have found no testimony elicited from appellant relative to "any transaction with or statement by the testator ..."

Nor has appellant indicated where in the record such testimony occurred other than by vague allusion.

The bill of exceptions prepared by appellant to preserve alleged error in the exclusion of his testimony reveals that appellant sought to demonstrate that testatrix was very nervous and angry about the litigation and about having to testify. She was likewise dissatisfied with the performance of her attorney and desired to terminate his services.

■■■ Very similar testimony was elicited by appellant on his case in chief through the testimony of attorney Bass. The record is replete with evidence that testatrix often changed attorneys because of dissatisfaction over their performance. The evidence excluded by the trial court was cumulative of evidence and its exclusion does not mandate reversal. *Priem v. Adams,* 352 S.W.2d 324 (Tex.Civ.App.—Austin 1961, writ ref'd n.r.e.); TEX.R. CIV.P. 434. Appellant's point of error number 21 is overruled.

Points of error 22 through 31 assail the trial court's findings of fact numbers 12, 15 and 16. Appellant contends that the evidence is legally insufficient to support the findings or that the findings are against

the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

The findings of fact assailed are:

12. Subsequent to April 19, 1978, Bessie Cooke Cato, Deceased, falsely came to believe, without any rational basis in fact, that Nancy Adele Saunders and husband, Williams Saunders, wanted to and had taken steps to take her property away from her.

\* \* \* \* \* \*

15. On June 18, 1979, when Bessie Cooke Cato, Deceased, executed her purported Last Will and Testament, she believed that Nancy Adele Saunders and husband, William Saunders, wanted to and had taken steps to take her property away from her, which belief constituted a state of supposed facts which no rational person would believe.

16. On June 18, 1979, when Bessie Cooke Cato, Deceased, executed her purported Last Will and Testament, the state of supposed facts believed by Bessie Cooke Cato, Deceased, influenced her to make a disposition of her property different from that which she otherwise would have made.

Appellant's complaint that the court's findings on insane delusion are unsupported by pleadings must be rejected in as much as the case was tried without objection upon such a theory as embraced within the issue of testamentary incapacity properly raised.

■ In a will contest, evidence with respect to an insane delusion is only admissible on the question of testamentary capacity. *Galindo v. Garcia*, 145 Tex. 507, 199 S.W.2d 499 (1947); *In re Price's Estate*, 369 S.W.2d 647 (Tex.Civ.App.—El Paso 1963), *rev'd on other grounds*, 375 S.W.2d 900 (Tex.1964).

Without again reciting the facts alluded to in our disposition of appellant's points of error 1 through 11 addressing testamentary capacity, we merely add that the record discloses that testatrix had informed Dr. Bailey that appellee, Nancy Adele Saunders, was trying to get control of her money and that she was very "designing." The evidence further reflects that testatrix disavowed the deed as being a forgery. Various wills executed by testatrix prior to June 18, 1979 designated appellee Nancy Adele Saunders as the principal beneficiary of a substantial portion of testatrix's estate. The will dated June 18, 1979, eliminated her as a beneficiary entirely.

■ There is clearly evidence supporting the court's findings. Furthermore, the evidence is sufficient and is not against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Appellant's points of error numbers 22 through 31 are overruled.

In his final five points of error, appellant asserts that the trial court's finding of fact number 19 and conclusion of law number 3 are not supported by legally sufficient evidence.

Finding of fact number 19 states:

The Will of Bessie Cooke Cato, Deceased, dated April 7, 1976 and the Codicil to that Will dated April 19, 1977 was not revoked by Bessie Cooke Cato, Deceased.

Conclusion of law number 3 states:

The Will of Bessie Cooke Cato, Deceased, dated April 7, 1976, and the Codicil to the Will dated April 19, 1977 is entitled to probate.

A written will may be effectively revoked by the execution, of a subsequent will, codicil, or written declaration with like formalities. TEX.PROB.CODE ANN. § 63 (Vernon 1980).

■ To establish revocation in this way, however, it must be shown that the testatrix was of sound mind when she executed the subsequent instrument, that she intended to revoke her original will and that the revoking instrument was executed in accordance with the prescribed formalities.

■ Where the proponent of a revoking instrument meets his burden of proving that the subsequent instrument was executed with the requisite formalities, he must further prove that the subsequent instrument was executed at a time when the testatrix was of sound mind and dispos-

ing memory. *See Halamicek v. Halamicek,* 542 S.W.2d 246 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.); *Wells v. Royall National Bank of Palestine,* 249 S.W.2d 695 (Tex.Civ.App.—Galveston 1952, writ ref'd n.r.e.).

In the instant case, we have held that the June 18, 1979 will was correctly denied probate because it was not executed with the requisite testamentary capacity, therefore, all portions of the will fail including the revoking provision. *Womack v. Woodson,* 169 S.W.2d 786 (Tex.Civ.App.—Beaumont 1943, writ ref'd); *Walker v. Irby,* 238 S.W. 884 (Tex.Comm.App.1922, no writ); *Dougherty v. Holscheider,* 40 Tex.Civ.App. 31, 88 S.W. 1113 (1905, writ dism'd).

Because the entire will must fail, there is no evidence that testatrix intended to revoke her will except as contained in a will declared to be a nullity. The will admitted to probate is not challenged by appellant in any other manner and the record supports the trial court's findings and conclusion that it was executed with the requisite formalities. The evidence is legally and factually sufficient to support the trial court's finding of fact number 19 and conclusion of law number 3. Points of error 32 through 36 are overruled.

The judgment is affirmed.