Charlene Elizabeth Dingler
**WATSON, Appellant,**

v.

**Donna DINGLER, Appellee.**

**No. C14–91–00048–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 9, 1992.
Rehearing Denied April 30, 1992.

J. Martin Clauder, C.K. Stephenson, Houston, for appellant.

Donald J. Dombrowski, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

This is an appeal from a judgment refusing to admit an October 1989 Will into probate on the grounds that it was an unjust disposition of property and the product of undue influence. Appellant brings five points of error challenging the evidence supporting the judgment and the trial court's decision in refusing to admit into evidence a Will executed on September 12, 1979. In a cross-appeal, Donna Dingler (appellee) alleges that the trial court erred in failing to render a judgment denying the application of Susan Lewis Dingler to probate the August 1989 Will of the decedent. We affirm.

Charles Junior Dingler (decedent) had four children. Richard, Russell and Donna Dingler are from his common law marriage with Ruth Pauline Dingler who is deceased. Charlene Dingler Watson (appellant) is decedent's child by Jane Elizabeth Butler Dingler, a previous wife. During his lifetime, decedent was a very active individual and an astute businessman who owned and managed a car lot. On January 13, 1989,

decedent collapsed and was admitted to St. Joseph's Hospital, where he was later diagnosed as having cancer of the brain, leaving him approximately a year to live. Due to his condition, decedent required constant care which was mainly provided by Susan Lewis Dingler (hereinafter Susan) until October 18, 1989, except for a brief period when Lila Fowler (decedent's sister) provided care for about a month. Susan and decedent had been married for about 1½ years before they divorced in 1985; however, she testified that she lived with decedent about 85 to 90 percent of the time in the last ten years. Susan also worked for the decedent at his used car lot. In a attempt to cure the brain tumor, decedent received chemotherapy and radiation treatment at M.D. Anderson Hospital. Either Susan or Lila provided transportation for such treatment except for one time when appellant took him.

On August 28, 1989, Decedent, Susan, and Lila went to the law offices of J.W. Robinson to have a Will prepared. In this particular Will, he left Susan his house, a Porsche, a Jaguar, and a bank account. Appellant was given the car lot and a bank account. Donna, Richard and Russell Dingler were each left $10. As time passed, the decedent's condition became worse, causing him to be very forgetful and easily confused. When the doctors stopped his treatment and informed him that there was nothing else they could do for his brain tumor, the decedent became very depressed. In the last 2 months of his life, the right side of decedent's body became more paralyzed, and his means of communication was restricted to nodding of the head and eye movements. In addition, the decedent became moody and was upset easily. In fact, during the month of October the decedent showed evidence of paranoid behavior when he was convinced that a policeman who was returning a confiscated weapon taken from Susan's son, was there to take him away. In another incident, he accused Tony Watson (Charlene's husband) of trying to give him an unnecessary shot. Part of decedent's condition was caused by the numerous medications he was taking at the time.

On October 18, 1989, Susan and the decedent got into an argument which led to Susan moving out. On the same day, Charlene moved in to allegedly take care of the decedent. The very next day, Charlene took her father to J.W. Robinson's office to change his Will, which was later executed on October 20, 1989. In the new Will, the decedent left everything to appellant except for a $10 bequest to Richard, Russell, and Donna Dingler. On October 27, 1989, decedent had medical difficulties again and was taken by ambulance to a hospital. The doctor informed appellant and Lila that the decedent had maybe three or four days to live. After spending the night at the hospital, appellant went back to decedent's house and started searching for his bank records and papers to the house. She also searched the attic because decedent usually hid money there. After collecting the papers, the appellant returned to the hospital with Lila around noon. After staying with the decedent most of the day, Lila left to go home, leaving decedent solely with appellant and her husband. Thereafter, appellant secured the decedent's signature on a document giving her check-writing powers on his checking accounts, which contained about $261,000. The notary that came to the hospital to witness the signing of the document stated that the decedent could not really speak, but communicated by nodding his head and blinking his eyes. After obtaining the signature, appellant and her husband, around 9 p.m., left the decedent alone at the hospital. Lila returned around 10 p.m. to spend the night with the decedent. He was then asleep or in a coma and never regained consciousness before passing away the next morning.

Five days later, the appellant filed an application to probate decedent's Will. Subsequently, Susan, Richard, Russell and Donna Dingler sought to set aside the purported Will, alleging lack of testamentary capacity and undue influence. In addition, on May 10, 1990, First Interstate Bank of Texas, filed a "Contest to Appointment of Charlene Elizabeth Dingler Watson as Independent Executrix." In its contest, the

bank asserted that Ms. Watson engaged in a scheme to defraud and mislead First Interstate and another local bank and had wrongfully misappropriated or converted funds belonging to the estate. The bank further stated that Ms. Watson (appellant) "is not a person of great financial responsibility and therefore should not be put in charge of substantial assets of the estate." In support of these allegations, First Interstate attached excerpts from a deposition taken of appellant wherein she admitted removing in excess of $100,000 in cash from the bank accounts shortly after the decedent's death and claimed to have lost approximately $110,000 gambling in Las Vegas in December of 1989. The trial court concluded that the Will dated October 20, 1989, was executed as a result of the undue influence of appellant, and therefore void and not entitled to probate as the Last Will and Testament of Charles Junior Dingler.

In four points of error, appellant alleges that there is no evidence or in the alternative insufficient evidence to support the trial court's finding that the Last Will and Testament dated October 20, 1989, executed by Charles Junior Dingler, made an unjust disposition of property or was the result of undue influence at the time of the execution of the instrument.

■■■ The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards which are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Gill Savs. Ass'n v. Chair King, Inc.,* 783 S.W.2d 674 (Tex.App.—Houston [14th Dist.] 1989), *modified,* 797 S.W.2d 31 (Tex. 1990). In a no evidence point of error, only the evidence and inferences that support the challenged finding will be considered, and all contrary evidence and inferences will be disregarded. *Id.* In a factual sufficiency point of error, all of the evidence will be considered and the finding will be set aside only if the evidence is so weak or the finding so against the overwhelming weight of the evidence that it is clearly wrong and unjust. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965).

■■■ In order for a testament to be set aside on the grounds of undue influence the contestant must prove: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence. *Rothermel v. Duncan,* 369 S.W.2d 917 (Tex.1963). Since undue influence involves an extended course of dealings and circumstances, it may be proven by circumstantial evidence as well as by direct evidence. *Id.* Thus, it is proper to receive evidence of all relevant matters that occurred within a reasonable time before or after execution of the Will, as tending to prove the existence of undue influence at the time of execution. *Lowery v. Saunders,* 666 S.W.2d 226 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.).

■■■ In ascertaining whether undue influence has been exercised, all material facts may be considered, including the circumstances attending execution of the instrument; relationship between the maker and the beneficiaries; the motive, character, and conduct of those benefited by the instrument; the words and acts of all attending parties; the physical and mental condition of the maker at the time of execution of the instrument; his age, weakness, infirmity, and dependency on or subjection to the control of the beneficiary; and the improvidence of the transaction by reason of unjust, unreasonable, or unnatural disposition. *In re Olsson's Estate,* 344 S.W.2d 171 (Tex.Civ.App.—El Paso 1961, writ ref'd n.r.e.). In a non-jury trial, the judge determines the credibility of the witnesses and the weight to be given their testimony. *Lowery* 666 S.W.2d at 233. Furthermore, after considering all the circumstances together, if it is reasonable to believe that undue influence was exerted in the procurement of the Will, the evidence is sufficient to sustain the trial court's conclusion. *Lowery* 666 S.W.2d at 234.

In the present case, the evidence establishes that Charles Junior Dingler suffered from cancer of the brain and was completely dependent upon others for care and companionship. His feeble condition indicates that he was physically incapable of resisting or that his mind was susceptible to an influence exerted. As such, the day after appellant moved into decedent's house, she took him to an attorney to change his Will, which just happened to leave everything to her. Moreover, when the decedent executed the Will on that day, his communication was limited to nodding. Further, appellant prevented Susan Dingler from visiting the decedent after she moved out. When appellant learned that decedent only had a couple of days to live, she quickly retrieved some documents from his house and brought them to the hospital for him to sign. Again, these documents just happened to grant appellant check writing authority on decedent's bank accounts, which provided appellant access to $261,-000. Even the notary that was conveniently summoned to the hospital that night to witness the transaction testified that decedent could only communicate by nodding and blinking his eyes.

More importantly, the testimony given by decedent's sister is evidence that appellant's undue influence overpowered the mind of the testator at the time of the execution of the testament. Lila testified that appellant admitted to staying up all night trying to convince decedent to change his Will. Specifically, Lila testified that appellant stated that "it took a lot to do," but she managed to talk him into changing his Will. One of the trial court's findings of fact was that he "believe[d] her testimony as to this fact." Based upon the circumstantial and direct evidence presented in the record, we find that the evidence is legally and factually sufficient to support the trial court's holding and, accordingly, overrule appellant's points of error one through four.

In her fifth point of error, appellant alleges that the trial court erred in refusing to admit into evidence the Last Will and Testament of decedent executed on September 12, 1979. However, appellant has failed to brief this point. Having found no fundamental error, we overrule this point. *Cleaver v. Dresser Industries*, 570 S.W.2d 479 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.).

In appellee's cross-appeal, she alleges that the trial court "erred in failing to render a judgment denying the application of Susan Lewis Dingler to probate the August 1989 Will of the decedent." On October 16, 1990, Donna, Richard and Russell Dingler filed a Motion to Modify Judgment, which requested the trial court to include in its judgment a ruling on the application of Susan Lewis Dingler to probate a prior Will of the decedent dated August 28, 1989. The trial court made no ruling on that motion within the required time, thus it was denied by operation of law. It is appellee's contention that the motion filed by Susan, Richard, Russell and Donna Dingler contesting the probate of the October 1989 Will, constituted an application for probate of the August 1989 Will. She further contends, that the trial court was required by the language of section 83(a) of the Probate Code to act on this application; and in the absence of any evidence on the issue, the only possible action the court could have taken was to deny the application. We disagree.

First, we do not believe appellee's contention is properly before us for review. The application to probate the Will was filed on November 3, 1989. On November 17, 1989, Donna, Richard and Russell Dingler, children of the deceased, and Susan Dingler, alleging herself to be the common law wife of the deceased, jointly filed a contest to the application to probate the October 20 Will. In the seventh and eighth paragraph, contestants alleged:

### VII.

Contestants have personal knowledge of the existence of a previously executed valid Last Will and Testament of the Decedent dated August 18, 1989. The August 18, 1989 Will designates Lila Fowler as Independent Executrix of the Decedent's estate. Contestants are

aware of no reason why she would be disqualified by law from accepting Letters Testamentary.

## VIII.

If the Court should decide that it cannot admit the August 18, 1989 Will to probate, then Contestants request the Court to enter an Order indicating that the Decedent died intestate and that his property should pass to his heirs at law in accordance with the law of descent and distribution in effect in Texas at the date of the Decedent's death.

Their prayer was that the offered Will not be admitted to probate, that the August Will be admitted to probate or in alternative that the court enter an order that the decedent died intestate. (The August Will was not attached or filed with the court.)

On May 4, 1990 Richard, Russell and Donna Dingler filed their Amended Opposition to Probate of the October Will. Susan Dingler did not join in the Amended opposition and all references to the August Will were deleted. Donna, in her cross-appeal, states "[T]he effect of this pleading was to leave Susan Lewis Dingler as the sole proponent of the August Will." While this may be true as to Susan, whom the trial court decided was not the common law wife of decedent, she is not a party to the appeal and has not complained of the failure of the trial court to act on the August Will. The live pleading of Donna, Richard and Russell Dingler made no reference to the August Will. Under these circumstances Donna is in no position to complain of the failure of the trial court to act upon the motion filed by Susan. Accordingly we do not believe the contention is properly before us.

Secondly, however, if the contention was properly before us, we would hold that the reference to the August Will in the opposition to probate the October Will did not satisfy the statutory requirements of an application. The probate code provides that a written Will shall, if within the control of the applicant, be filed with the application for its probate. TEX.PROB. CODE ANN. art. § 81(a) (Vernon Supp.1992).

Section 81(a) specifically states ten statutory requirements for a proper application, which were not satisfied in appellee's motion. Before the trial court could exercise jurisdiction over the August Will, an application for probate must be filed, which was not done in the present case. *Id.* Furthermore, even if the motion did constitute a proper application, there is no proof that the clerk of the court issued a citation to all parties interested in the estate. TEX.PROB. CODE ANN. art. § 128(a) (Vernon 1980). Appellee contends that the citation for the October Will is sufficient for the August Will; however, she fails to provide proper authority for this argument, nor do we find any. Without a proper service of citation, no application for a probate of a Will may be acted upon. *Williams v. White,* 105 S.W.2d 1105 (Tex.Civ.App.—Waco 1937, no writ). Therefore, appellee's point of error is overruled.

The judgment of the trial court is affirmed.