

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00555-CV

**IN THE GUARDIANSHIP OF CHARLES INNESS THRASH,**
An Incapacitated Person

From Probate Court No. 1, Bexar County, Texas
Trial Court No. 2017-PC-002912-B
Honorable Oscar Kazen, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Patricia O. Alvarez, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: March 31, 2021

APPEAL PARTIALLY DISMISSED; ORDER AFFIRMED

Appellants Laura Martinez, Brittany Martinez, Philip Ross, and Billy Duncan as Next Friend of Charles Inness Thrash challenge the trial court's order imposing monetary and other sanctions against them for fraud on the court, bad faith abuse of the judicial process, and a common scheme to interfere with the administration of the guardianship of Thrash's person and estate. We dismiss Billy Duncan's appeal for lack of jurisdiction and affirm the trial court's May 29, 2019 order imposing sanctions.

## BACKGROUND

This is the fourth appeal filed in this court arising out of the guardianship proceeding involving Charles Inness Thrash. Many of the facts underlying this case are set forth in three previous, related opinions in appeals numbered 04-19-00104-CV (capacity, guardianship), 04-19-

00236-CV (annulment), and 04-19-00477-CV (pleadings struck, failure to intervene). We repeat only a few of those facts here to provide a general background and recite additional facts pertinent to this appeal.

In 2017, after an anonymous report that Laura Martinez, Thrash's girlfriend, was mishandling his assets, the Texas Health and Human Services Commission ("HHS") filed an application for appointment of temporary and permanent guardians of Thrash's person and estate based on mental incapacity. The application alleged that Thrash, 79 years' old at the time, suffered from Alzheimer's disease and that under Laura's influence he recently changed his will to make Laura and her family beneficiaries, executed a power of attorney in Laura's favor, and revised his business plan to name Laura as successor-owner of his automobile shop. The application was supported by the report of a neuropsychologist who opined Thrash was unable to handle his personal and financial affairs due to degenerative dementia, plus the affidavits of the HHS guardianship specialist and the investigator finding that Laura isolated Thrash from his family, long-time friends, and business associates, including his long-time attorney. In addition, there was evidence that Thrash's spending habits had changed significantly, including his cash purchase of a $750,000 home for Laura (which Thrash believed cost $230,000) and a $50,000 loan to Laura, and testimony of Frost Bank employees who observed Laura coaching Thrash through bank transactions on numerous occasions. At the conclusion of the temporary guardianship hearing, the trial court found there was substantial evidence that Thrash lacked capacity and appointed attorney Tom Bassler the temporary guardian of Thrash's person and estate. Over the next year, the trial court received updates regarding Thrash's health and estate, including testimony from Thrash that he wanted to live with Laura and did not need a guardian.

In November 2017, Tonya Barina, Thrash's great-niece, filed an application to be appointed permanent guardian of his person and estate. Laura filed a response asserting her power

of attorney was a less restrictive means of monitoring Thrash and alternatively requesting her appointment as guardian. In a November 15, 2018 order, the trial court found that Thrash lacked the capacity to care for himself, contract, or marry, and appointed Barina as permanent guardian of his estate and Laura as permanent guardian of his person. The two guardians filed competing motions for new trial. After a January 29, 2019 hearing, the trial court re-affirmed the finding of Thrash's incapacity and the need for a permanent guardianship, denied Laura's motion for new trial, granted Barina's motion for new trial and appointed her permanent guardian of the estate as Thrash's nearest living relative, and appointed Mary Werner as permanent guardian of Thrash's person (Barina and Werner are referred to herein as the "Guardians"). Laura and her daughter Brittany appealed. In an opinion setting forth the evidence establishing Thrash's mental incapacity and supporting appointment of the Guardians, we affirmed the trial court's January 29, 2019 order. *In re Guardianship of Thrash*, No. 04-19-00104-CV, 2019 WL 6499225 (Tex. App.—San Antonio Dec. 4, 2019, pet. denied) (mem. op.) (referred to as *Thrash #1*).

On February 2, 2019, Laura and Thrash went to Dewitt County, Texas where they obtained a marriage license without advising or obtaining consent from the court or the Guardians. Laura and Thrash were married in a ceremony in DeWitt County on March 4, 2019. On March 8, 2019, Laura filed an application for an order of spousal support. One week after the marriage, the Guardians filed a petition to annul the marriage in a proceeding ancillary to the guardianship. After a hearing, the trial court granted the petition and annulled the marriage due to Thrash's lack of capacity. Laura and Brittany appealed. We affirmed the annulment and dismissed Brittany's appeal for lack of jurisdiction. *In the Matter of Marriage of Thrash*, 605 S.W.3d 224 (Tex. App.—San Antonio 2020, pet. denied) (referred to as "*Thrash #2*").

Attorney Philip Ross became involved in the guardianship case when he filed a response in support of Laura's motion for new trial "on behalf of Thrash," and appeared at the January 29,

2019 motion for new trial hearing asserting he was retained counsel for Thrash. The trial court only allowed Ross to act as co-counsel for Laura at the hearing, noting that it had already found Thrash lacked capacity to contract. The day after the hearing, Ross filed a notice of appearance as "retained counsel for Thrash." Beginning in February 2019 and continuing through the sanctions hearings held in April and May 2019, Ross filed multiple pleadings in the guardianship proceeding purportedly on behalf of Thrash and on behalf of Laura and Brittany as "persons interested" in the welfare of Thrash. In sum, the various pleadings sought to prohibit the Guardians from performing their duties and to remove Barina and Werner as guardians and restore Thrash's capacity and dissolve the guardianship. The Guardians objected and moved to strike the pleadings because they were improperly filed by the ward and by "persons interested" in the ward's welfare without first obtaining permission to intervene in the guardianship proceeding. After an April 9, 2019 hearing, the trial court struck nineteen pleadings filed by Ross on behalf of Thrash, Laura and Brittany. They appealed. We held the order striking the pleadings was interlocutory and dismissed the appeal for lack of jurisdiction. *In re Guardianship of Thrash*, 610 S.W.3d 74 (Tex. App.—San Antonio 2020, pet. denied) (referred to as *Thrash #3*).

Beginning on April 10-12, 2019 and continuing on May 8-10, 2019, the trial court held a series of hearings on a motion for sanctions and application for temporary restraining order and injunction filed by the Guardians against Ross, Laura and Brittany[1] based on their actions in the guardianship proceeding and related proceedings. In addition to documentary evidence, the trial court considered testimony by the Guardians, Laura, Brittany, Michelle (another of Laura's daughters), Ross, and the attorneys for the Guardians regarding fees incurred. The trial court also

---

[1] Sanctions were also sought against Laura's son Jose H. Martinez, but no findings were made and no sanctions were imposed against him. Although the Sanctions Order contains findings against Laura's daughter Michelle Martinez, no sanctions were imposed against her.

took judicial notice of the entire history of the guardianship proceeding, including "all admonitions to counsel made in open court" and "all representations of fact made by counsel in open court," as well as the pleadings, orders, and exhibits filed in two adoption proceedings in district court.

After taking the matter under advisement, the trial court signed a Second Amended Order Granting Motion for Sanctions" on May 29, 2019 (the "Sanctions Order") which contains 70 paragraphs of findings and conclusions in support of the sanctions imposed. In summary, the trial court found:

- Ross and Laura were aware that the January 29, 2019 order ("Order on Capacity") finding Thrash "totally incapacitated and without capacity to contract or marry" was a final order and Thrash's capacity had not been restored (Paragraph 1);

- At the time of the Order on Capacity and at all times thereafter, "Thrash was not lawfully or validly married to Laura by ceremonial marriage or otherwise" or "by common law" (Paragraph 2);

- Ross and Laura "engaged in a scheme to cause Thrash … without the capacity to contract or marry, to participate in a marriage ceremony" by taking him out of Bexar County, obtaining a marriage license in DeWitt County, arranging and participating in a marriage ceremony on March 4, 2019 in DeWitt County in which Laura took the vows and Ross served as best man and signed the marriage certificate, all without the knowledge or consent of the Court or the Guardians; in doing so, Ross demonstrated a "lack of candor to the Court;" as a result of the "attempted wrongful marriage," Thrash's estate incurred substantial costs, expenses, and attorneys' fees in having the marriage set aside and annulled (Paragraphs 3-5);

- The Court repeatedly informed Ross, in the presence of Laura and Brittany, that, because Thrash had been found incapacitated, Ross could not act as Thrash's attorney and had no standing to represent Thrash's interests in the guardianship (specifically, at the January 29, 2019 motion for new trial hearing, the February 4, 2019 hearing on Ross's motion for a TRO/Temporary Injunction against the Guardians, the February 22, 2019 hearing on Ross's second motion for a TRO/Temporary Injunction, the March 7, 2019 hearing on Ross's second amended motion for a TRO/Temporary Injunction, and the March 15, 2019 hearing on the petition for annulment); the Court repeatedly informed Ross, in the presence of Laura and Brittany, that the proper procedure was to seek to intervene pursuant to section 1055.103 of the Texas Estates Code (Paragraph 6);

- On March 5, 2019, Ross, with knowledge of the Order on Capacity and prior admonishments about Thrash's incapacity to contract, signed and filed petitions on behalf of Thrash for adoption of two of Laura's adult children, Brittany and Jose;[2] the adoption petitions signed by Ross "falsely represented" that Ross was the attorney for Thrash and contained the "knowingly false statement" that "(t)here are no Court-ordered relationships affecting the parties or the subject matter of this suit when in fact there was a court ordered guardianship for Thrash at that time; the petitions for adoption were "groundless and brought in bad faith … for the purpose of harassment and to interfere with the pending guardianship;" the petitions for adoption were signed and filed in violation of Tex. R. Civ. P. 13 and section 10.001 of the Tex. Civ. Prac. & Rem. Code Ann. by Ross and "at the request of and with full knowledge of Laura, Brittany and Joe;" Ross demonstrated a "lack

---

[2] The two adoption proceedings are Cause No. 2019-CI-04422, *In the Interest of Brittany Alexandria Martinez, an Adult*, filed in the 150th Judicial District Court, Bexar County, Texas, the Honorable David Canales, presiding, and Cause No. 2019-CI-04424, *In the Interest of Jose Humberto Martinez, an Adult*, filed in the 224th Judicial District Court, Bexar County, Texas, the Honorable David Canales, presiding.

of candor" to Judge Canales by failing to notify him of the Order on Capacity and the fact the Court and Guardians had no knowledge of the adoption petitions; Ross also demonstrated a "lack of candor" to the Court by failing to notify it of his intent to participate in adoption proceedings without prior knowledge or consent by the Court or Guardians; Thrash's estate incurred substantial costs, expenses, and attorney's fees to obtain a new trial and order vacating the adoptions, as well as attorney's fees to establish Ross was without authority to represent Thrash on a Rule 12 Motion to Show Authority in the district court (Paragraphs 7-14);

- Despite knowledge of the Order on Capacity, Ross filed multiple pleadings and made multiple appearances "claiming to be the attorney for Thrash" (list omitted) (Paragraph 15);

- Based on prior testimony and in-court statements by Laura and Ross that she and Thrash were not married, neither ceremonially nor by common law, the verified pleadings and testimony by Laura, Brittany, and Ross asserting Laura and Thrash had a common law marriage "lack credibility and demonstrate a lack of candor with [the] Court and outright misrepresentations to the Court" (Paragraphs 16-19; list omitted);

- Ross admitted in court that he filed two petitions against the Court personally (Cause Nos. 2019-CI-08371 and 5:19-CV-00467) and a Second Motion for Recusal "with the intent to cause [the] Court to change its previous rulings in [the] guardianship proceeding;" Laura testified the two petitions against the Court personally "were filed for the purpose of providing an additional basis for seeking recusal of Judge Kazen and as part of a plan by Ross, Laura and Brittany to seek a more favorable venue and a different judge in hopes of improving their changes of favorable rulings" (Paragraphs 20-21);

- The Second Motion for Recusal filed by Ross reiterated 33 identical recusal points previously denied in his first motion to recuse; Judge Sid Harle, assigned to consider the first and second recusal motions, found that Ross demonstrated a "lack of candor" by failing to note in the second motion that the identical points had previously been denied and noted that "counsel waited until the day before the hearing" to file the second motion, which was also denied; Ross similarly filed the first motion for recusal the day before an injunction hearing; based on the timing of the two recusal motions and "the history of Defendants' actions in this cause," the Second Motion for Recusal was "filed solely for the purpose of delay to avoid a hearing on the Motion for Sanctions," was "knowingly false" and groundless and filed in bad faith for the purpose of harassment in violation of Tex. R. Civ. P. 13 and Tex. Civ. Prac. & Rem. Code Ann. § 10.001 by Ross, at the request of and with full knowledge of Laura and Brittany; as a result of the wrongful Second Motion for Recusal, Thrash's estate incurred substantial costs, expenses, and attorney's fees to respond to the motion (Paragraphs 22-26);

- Ross filed two letters purporting to be informal requests by Thrash to the Court pursuant to section 1202.054 of the Estates Code "as if they were written by Thrash and as if they reflected Thrash's own words and did not notify the Court that Ross was the author of the letters and that Thrash had merely copied Ross' words;" Ross' actions and omissions with respect to the letters demonstrated a "lack of candor" to the Court, and constituted misrepresentations and interference with an informal request by a ward (Paragraph 27);

- Ross, Laura, and Brittany "repeatedly and improperly sought to involve themselves in [the] guardianship proceeding without first complying with the requirements of Texas Estates Code § 1055.003 [intervention procedure]" despite the Court's repeated admonishments

that they lack standing to assert rights on behalf of Thrash or as interested persons and that they must follow the statutory procedure for intervention; nevertheless, Ross "with the knowledge and consent of Laura and Brittany" continued filing pleadings as intervenor or interested persons in the guardianship without filing a motion to intervene and obtaining a ruling under the Code; as a result, it was necessary for the Guardians to file a Motion to Strike Intervention Pleadings and for the Court to strike 19 pleadings (the "Stricken Pleadings") which were knowingly false, groundless and filed in bad faith for the purpose of harassment, delay and in violation of Tex. R. Civ. P. 13 and Tex. Civ. Prac. & Rem. Code Ann. 10.001 "with full knowledge by, and consent of, Laura and Brittany;" as a result, Thrash's estate incurred substantial costs, expenses, and attorney's fees (Paragraphs 28-31; list omitted);

- Ross signed and filed an Application for Spousal Support "as attorney for Laura and for her benefit and to the detriment of Thrash, an individual Ross also alleged to represent and … was providing legal advice to;" Ross therefore sought and claimed to represent parties with interests adverse to each other in the same proceedings; the application falsely asserted that Laura was Thrash's spouse which Ross and Laura knew to be untrue; the application was groundless and filed in bad faith for the purpose of harassing and interfering with the Guardians, to secure Thrash's assets for Laura's personal use, and in violation of Tex. R. Civ. P. 13 and Tex. Civ. Prac. & Rem. Code Ann. 10.001 "at the request of, and with full knowledge of Laura" (Paragraphs 32-34);

- On March 14, 2019, the Court entered a Temporary Restraining Order against Ross, Laura, Brittany, Jose, Michelle, and Mario Martinez which restrained them from engaging in certain activities and required them to perform certain activities (the "TRO"); the

respondents never sought to dissolve, vacate, or modify the TRO and never sought appellate relief on the TRO; Ross, Laura, Brittany, and Michelle committed numerous violations of the TRO by various acts and omissions, including, without limitation, interfering with the Guardians' performance of their duties, concealing assets such as Thrash's gold Rolex watch, 2016 Corvette, and business records, refusing to turn over and inventory the estate's assets, coming within 500 feet of Thrash's airplane hangar, taking control and occupying the residential property (Paragraphs 35-39);

- On April 12, 2019, the Court entered a Temporary Injunction Order against the same respondents and it was never dissolved, vacated, modified, or appealed; Ross, Laura, Brittany, and Michelle committed numerous violations of the Temporary Injunction in the same manner as the TRO violations (Paragraphs 40-44);

- Ross, Laura, and Brittany appeared before Justice of the Peace Roberto Vasquez and attempted to assert rights under an alleged business lease to gain control of property owned by Thrash or his estate; "only after being confronted by Plaintiffs' counsel, did Ross admit that the document he presented to Judge Vasquez as the lease for the property was actually a document which was 'reconstructed from memory'"; such actions by Ross, Laura, and Brittany constituted a material misrepresentation and lack of candor to the Justice of the Peace court (Paragraph 45);

- "As a part of the **ongoing pattern of fraudulent conduct** and the **scheme to frustrate** and avoid the effect of the … Order on Capacity, to interfere with the proper administration of the [guardianship], to undermine the authority and integrity of [the] Court, and to interfere with [the] Court's legitimate exercise of its traditional core functions," Ross and Laura went to a local Social Security Administration office on multiple occasions to collect

Thrash's social security benefits, redirected the mailing of the benefits to Ross, and failed to turn over related correspondence, shredding it instead; Laura supplied false information to the Social Security Administration by falsely claiming to be Guardian of Thrash's Person (Paragraph 46) (emphasis added); and

- Ross was served with subpoenas for himself, Laura, and Brittany requiring the production of documents and items on April 10, 2019 during a continuation of the sanctions/injunction hearings; Laura and Brittany failed to comply with their respective subpoenas, citing Ross's failure to deliver and/or explain the subpoenas as the reason; Brittany destroyed documents and information subject to the subpoena (Paragraphs 47-48).

Based on the above fact findings, the trial court concluded that Laura and Brittany provided false testimony, made conflicting sworn statements, gave non-responsive answers to direct questions, unpersuasively claimed lack of memory, and provided misleading and incomplete testimony, thereby demonstrating "a complete disregard for their obligation to be truthful; nor any concern for the sanctity of their oath; that they will testify to whatever facts are necessary for the moment to achieve their purposes; that their sworn testimony is unreliable; that they have no respect for the authority of the Court; and have and will continue to engage in **bad-faith abuse of the judicial process**." (emphasis added). The court stated the acts and omissions of Laura and Brittany justify the inference they will not provide truthful testimony in the future and the imposition of a sanction prohibiting them from offering any further testimony in the proceedings. The court further concluded that, based on its findings of their acts and omissions, Ross, Laura and Brittany "**participated in a fraud upon [the] Court**," as well as the district court in which the adoption proceedings were filed and the justice of the peace court that addressed the business lease, and, "acting in concert with each other" and "in furtherance of a **common plan or scheme" to interfere** with the guardianship, they "designed and carried out a **vexatious litigation campaign**

against Thrash and his property, the Guardians, and the Court involving … multiple suits, in multiple forums." (emphasis added). The actions and omissions by Ross, Laura, and Brittany had the effect of frustrating and avoiding the effect of the Order on Capacity, interfering with the proper administration of the guardianship, and undermining the authority and integrity of the court with respect to deciding fact issues, questions of law, and rendering and enforcing final orders. (Paragraphs 49-53).

In justifying the imposition of sanctions, the trial court found that the conduct of Ross, Laura, and Brittany was "intentional, knowing, and outrageous" and stated there is a "direct relationship between the sanctions ordered … and the offensive conduct of each of [the] Respondents and of Respondents' collective conduct," after considering the relative culpability of each party and counsel. The court further noted that, "Respondents' repeated misconduct … supports the inference that their claims and defenses are without merit." The court stated it considered the full range of sanctions and found the sanctions imposed are not excessive nor more severe than necessary because the imposed sanctions "are the only sanctions sufficient to remedy the harm caused … are appropriate to punish Respondents for their improper behavior, and sufficient to dissuade them" from similar behavior in the future.

After discussing the applicable law and its authority to impose sanctions, the court imposed the following monetary sanctions to be paid to the Guardians of the Person and Estate: (1) $187,529 in compensatory sanctions/attorney's fees against Ross, Laura, and Brittany, jointly and severally, which represents the cumulative attorney's fees incurred by the Guardians for the sanctions/injunction matters; (2) $30,445 in compensatory sanctions/attorney's fees against Ross, which represents the cumulative attorney's fees incurred by the Guardians on the annulment, striking of pleadings, and second recusal motion; (3) $5,000 in punitive sanctions against Ross; (4) $2,500 in punitive sanctions against Laura; and (5) $1,500 in punitive sanctions against

Brittany. As additional sanctions, the court struck all pleadings filed by Laura and/or Brittany asserting any affirmative claim or defense and stated that Laura and Brittany will not be entitled to offer any testimony or verify any pleadings in the guardianship proceeding. Laura was further barred from pursuing any claim, and offering any evidence to support a claim, that she is or ever was Thrash's wife, whether by ceremonial marriage or common law marriage. Finally, the court assessed appellate attorney's fees. The court severed the sanctions order into a separate cause number, 2017-PC-2912-B, so that it would be final and appealable. Notices of appeal were filed by Ross, Laura, Brittany, and Billy Duncan as Next Friend of Thrash.

## DISCUSSION

In several issues, appellants argue the trial court abused its discretion by imposing the sanctions. Specifically, they assert: (1) the Guardians were responsible for "the ill-advised decisions to litigate" the various matters and incur expenses and attorney's fees in breach of their fiduciary duties to Thrash's estate; (2) the court failed to properly consider Thrash's best interests with respect to the support and services provided by his "informal family;" (3) the sanctions based on the marriage and adoptions are erroneous because the Final Guardianship Order did not specifically prohibit adoption of an adult and the marriage and adoptions caused no harm to Thrash or his estate; (4) the probate court lacked jurisdiction to impose sanctions based on conduct in the adoption and recusal proceedings; and (5) the sanctions against Ross are erroneous because his zealous advocacy was not vexatious and his actions were protected by attorney immunity. The appellants do not challenge: the reasonableness of the amount of monetary sanctions; that they engaged in the acts and omissions detailed in the court's findings; the direct relationship between their acts and omissions and the particular sanctions; the striking of pleadings or the prohibition against future pleadings and testimony, including claims that Laura is Thrash's spouse; the court's

inherent and statutory authority to impose sanctions; or the due process afforded appellants before sanctions were imposed.

### *Appellate Standing*

We must first address whether Billy Duncan as Next Friend of Thrash has standing to appeal the Sanctions Order. In their appellees' brief, the guardians assert that Duncan is not authorized to act on Thrash's behalf, is not a party of record in the guardianship proceeding, and did not intervene as an "interested person" in the guardianship proceeding; therefore, Duncan has no appellate standing and his appeal must be dismissed. We agree. As we stated in the related appeals, "[s]tanding is a component of subject-matter jurisdiction" which is "typically afforded 'only to parties of record.'" *Thrash #1*, 2019 WL 6499225, at *4 (citing *State v. Naylor*, 466 S.W.3d 783, 787 (Tex. 2015)); *Thrash #2*, 605 S.W.3d at 228. Standing must exist at every stage of litigation, including appeal and we address a question of standing de novo. *Thrash #1*, 2019 WL 6499225, at *4.

Here, the record does not show that Duncan became a party to the guardianship proceeding or ever intervened as an "interested person" in the guardianship proceeding. *See id.* (describing the procedure to become an intervenor in a guardianship proceeding under Estate Code sections 1055.001 and 1055.003). The January 29, 2019 Order appointing Barina and Werner as permanent guardians of Thrash's estate and person vested them with the sole authority to act on Thrash's behalf under sections 1151.051 and 1151.101 of the Estate Code. *See* TEX. EST. CODE ANN. §§ 1151.051 (powers and duties of guardian of the person), 1151.101 (powers and duties of guardian of the estate). The Final Guardianship Order has not been withdrawn and has remained in effect to date. Further, Rule 44 specifically disallows representation by "a next friend" when a person has a legal guardian. TEX. R CIV. P. 44. As we noted in *Thrash #1*, a person's "mere interest in the welfare of a ward" is not sufficient to establish standing. *Thrash #1*, 2019 WL

6499225, at *4. Because Duncan did not intervene and become a party of record in the guardianship proceeding and cannot appear "as next friend" because Thrash has permanent guardians, Duncan does not have standing to challenge the Sanctions Order on appeal. We must therefore dismiss his appeal. *See id.* (dismissing Brittany's appeal of the Final Guardianship Order because she was not a party to or intervenor in the guardianship proceeding); *see also Thrash #2*, 605 S.W.3d at 229 (dismissing Brittany's appeal of the annulment order because she was not a party to or intervenor in the annulment proceeding).

### *Standard of Review: Sanctions Order*

We review a trial court's imposition of sanctions for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 383-39 (Tex. 2004). A court abuses its discretion when it acts arbitrarily or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985). Appellants assert the applicable standard of review is an abuse of discretion standard modified by a "best interest consideration" as applied in *Abbott v. G.G.E., E.M.B., and G.D.E.*, 483 S.W.3d 633 (Tex. App.—Austin 2015, pet. denied). However, the standard used in *Abbott* does not apply here. *Abbott* did not involve a sanctions order, but rather denial of a Rule 12 motion challenging an attorney's authority to appear as next friend on behalf of an incapacitated person not subject to a guardianship. *Id.* at 644.

### *Actions by the Guardians to Enforce the Final Guardianship Order*

In their first issue, Appellants argue the Guardians and their attorneys were the parties responsible for causing Thrash's estate to incur substantial expenses and attorney's fees to litigate Thrash's "right to counsel," marriage, adoptions, stricken pleadings, recusals, and sanctions issues; therefore, the Guardians breached their fiduciary duties. Appellants contend the Guardians should be "estopped from blaming the Appellants for exploitation [of Thrash] under the unclean hands

doctrine." The Guardians reply they were forced to respond to the various pleadings filed by Ross in order to protect Thrash and his assets and to enforce the Final Guardianship Order.

The trial court noted on the record at the April 9, 2019 hearing that 27 pleadings had been filed in the guardianship proceeding since mid-January 2019. The record reflects that the vast majority of those pleadings were filed by Ross on behalf of Laura and Brittany, or purportedly on behalf of Thrash. Ross filed multiple pleadings, including several amended motions for temporary restraining orders and temporary injunctions, against the Guardians for acts consistent with the performance of their duties under the guardianship such as "evicting Thrash's informal family" from his home (and Brittany from his airplane hangar), changing the locks at Thrash's automobile repair business, substituting paid caregivers for "family based support and services," taking possession of Thrash's personal property, and "abducting Thrash" for a private visit with the Guardian of his Person. Each of these actions challenged and litigated by Ross generally constitute appropriate actions by lawfully appointed guardians under the authority of the Estate Code. *See* TEX. EST. CODE ANN. §§ 1151.101-.104, 1151.151 (powers and duties of guardian of the estate); *see also id.* §§ 1151.051-.052 (powers and duties of guardian of the person). The Guardians' attorneys were forced to respond to the pleadings challenging the performance of their duties each time in order to enforce the Final Guardianship Order.

Moreover, as noted in the Sanctions Order, Ross continued to file pleadings against the Guardians after he was admonished that he could not represent Thrash and that he could not file pleadings on behalf of Laura and Brittany as "interested persons" unless he first complied with the requirement for intervention under the Estate Code. *See id.* at § 1055.003. Ross never filed a motion to intervene under the Code and, as of the date of the Sanctions Order, there had been no intervention by Laura or Brittany, or by Ross personally, in the guardianship proceedings. As noted, 19 pleadings filed by Ross were stricken by the trial court for lack of standing upon the

Guardians' objection and motion. The purpose of the Estate Code's requirement that its intervention procedure be complied with before a person interested in the ward's welfare may appear is to avoid just such litigation expenses incurred here in responding to pleadings filed by non-parties with no standing in the guardianship proceeding. *Id.* Appellants' argument that the Guardians request for sanctions was barred by their "unclean hands" due to "their own negligence, bad judgment and breach of fiduciary duty" is based on the false premise that Ross, Laura, and Brittany could continue to file pleadings without properly intervening. There is no evidence in the record to show that either of the Guardians breached their fiduciary duty to Thrash or otherwise acted in bad faith or without authority. The trial court had the inherent authority as well as the statutory authority to impose sanctions on Ross, Laura and Brittany based on their acts and omissions with respect to Thrash's guardianship. We overrule appellants' first issue.

### *Arguments About Thrash's Best Interests*

Appellants' argument in Issue No. 2 that the trial court failed to properly analyze Thrash's best interests with respect to the support provided by his "informal family" is misplaced in this appeal. Thrash's best interests with respect to supports and services provided by friends and family were considered by the trial court when it signed the Final Guardianship Order and were addressed on appeal in *Thrash #1* when we affirmed the findings of incapacity and the necessity of appointing Werner and Barina as permanent guardians of the person and estate. *See Thrash #1*, 2019 WL 6499225 at *8-9. Appellants repeatedly sought to justify their actions and omissions detailed in the Sanctions Order as being in Thrash's best interests at the sanctions hearings and throughout their brief continue to assert they were advocating for Thrash's right to counsel, restoration of his capacity, removal of the Guardians, and dissolution of the guardianship in favor of a less restrictive alternative. However, all of those issues had already been determined in the Final Guardianship Order finding Thrash lacked capacity to care for himself, contract, or marry, or were not properly

before the probate court in accordance with the procedures outlined in the Estate Code. The sole issue before the trial court on the motion for sanctions was whether the acts and omissions engaged in by appellants (as detailed in the Sanctions Order) warranted the imposition of sanctions. We overrule appellants' second issue.

### *Sanctions for Marriage and Adoptions*

Appellants next assert the sanctions based on the marriage and adoptions are erroneous because the Incapacity/Guardianship Order did not specifically prohibit Thrash from adopting an adult and the marriage and adoptions caused no harm to Thrash or his estate. The plain language of the Final Guardianship Order found that Thrash was without the capacity to enter into a contract or marry. Both marriage and adoption are matters of contract that require a person to have capacity to understand the nature of the agreement and to enter into the agreement voluntarily. *See Thrash #2*, 605 S.W.3d at 231; TEX. FAM. CODE ANN. § 6.108 (noting mental capacity required for valid marriage). The trial court repeatedly sought and obtained confirmation from Ross and Laura that she and Thrash were not married, either ceremonially or by common law, before entry of the Final Guardianship Order on January 29, 2019.[3] The evidence was undisputed that Ross and Laura did not notify the trial court or the Guardians, or obtain their consent, before traveling out of county to obtain a marriage license and participate in a ceremonial marriage in March 2019. The evidence was similarly undisputed that Ross, Laura, and Brittany did not notify the trial court or the Guardians, or obtain their consent, before filing petitions for adoption and participating in adoption proceedings under the false representation that there was no court-ordered relationship affecting Thrash. Appellants' argument that neither Thrash nor his estate were harmed by his marriage and adoption of his "informal family" is not relevant to whether the actions by Ross, Laura, and

---

[3] The trial court was entitled to disbelieve Ross's later testimony to the contrary at the sanctions hearing when he stated he formed a belief they were common law married.

Brittany with respect to these matters warranted sanctions for abusing the judicial process, acting in bad faith, and knowingly making false representations. We overrule appellants' third issue.

***Jurisdiction to Impose Sanctions for Adoption Proceedings and Recusal Motion***

Appellants next argue that the probate court did not have jurisdiction to sanction them for their conduct in the adoption proceedings in district court and for filing the second recusal motion ruled on by the administrative judge. We disagree. Statutory probate courts have exclusive jurisdiction over guardianships and all matters related to an on-going guardianship proceeding. TEX. EST. CODE ANN. §§ 1022.005, 1022.001(a), 1021.001(b); *In re CC&M Garza Ranches Ltd.*, 409 S.W.3d 106, 109 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding). A matter is considered related to a pending guardianship proceeding if the appointed guardian is a party to the cause of action. TEX. EST. CODE ANN. § 1021.001(b)(3). The probate court acquires exclusive jurisdiction over the ward's estate upon the filing of an application for appointment of a guardian and such jurisdiction continues until the guardianship is settled and closed. *Wood, ex rel. Green v. Dalhart R&R Machine Works, Inc.*, 259 S.W.3d 229, 230 (Tex. App.—Amarillo 2008, no pet.). In addition, a court exercising jurisdiction in a guardianship may also exercise pendent and ancillary jurisdiction as necessary to promote judicial efficiency and economy. TEX. EST. CODE ANN. § 1022.001(b).

Here, the probate court had exclusive jurisdiction over Thrash's person and estate at the time the petitions for adoption were filed and granted in district court. The adoptions directly affected Thrash's person and estate by creating new family members with an interest in his estate and eligible to apply to become a guardian of the person or estate. *See* TEX. EST. CODE ANN. § 1104.102(2). As the Guardians point out in their brief, "[a]llowing an adult adoption to take place without permission of the Guardian of the Person and without notifying the court, [would] permit[] shenanigans to thwart statutory eligibility requirements for guardians." The probate court

reviewed the adoption pleadings containing the false representation that Thrash was not under a court-ordered relationship and heard testimony about the adoption proceedings before making its findings that appellants made false statements, exhibited a lack of candor, and engaged in a bad faith abuse of the judicial process warranting sanctions for the adoption scheme.

With respect to appellants' filing of the Second Recusal Motion,[4] it was filed the day before the sanctions hearing and sought to remove the judge with knowledge of the entire history of the guardianship litigation based on the same grounds denied in the first motion to recuse. The assigned administrative judge denied the Second Recusal Motion the day after it was filed without a hearing. In the order, the judge specifically stated that the second motion reiterated the identical grounds denied in the first recusal motion or raised grounds that did not require recusal. Appellants now argue the administrative judge had exclusive jurisdiction to impose sanctions related to the filing of the Second Recusal Motion. In support, appellants rely on section 25.00255(k) of the Government Code. However, that statute states, "the presiding judge of the administrative judicial district or the judge assigned to hear the motion for recusal may approve a motion for sanctions authorized by Rule 215.2(b), Texas Rules of Civil Procedure." TEX. GOV'T CODE ANN. § 25.00255(k). Rule 215.2(b) authorizes sanctions for failure to comply with a court order to provide or permit discovery and does not apply here. TEX. R. CIV. P. 215.2(b). Paragraphs 19-25 set forth the probate court's findings that the Second Recusal Motion was groundless and filed in bad faith in violation of § 10.001 and Rule 13. TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (good faith pleading requirements); TEX. R. CIV. P. 13 (authorizing sanctions based on groundless pleadings brought in bad faith or for the purpose of harassment, and for knowingly groundless or

---

[4] Appellants were only sanctioned for their bad faith filing of the second motion to recuse. The trial court expressly stated at the sanctions hearing that appellants were entitled to file the first motion to recuse even though it was filed late and it was not going to assess any sanctions related to the first recusal motion.

false statements). Further, Ross admitted at the sanctions hearing that the reason he filed the Second Recusal Motion and separate lawsuits against the probate judge was to cause the judge to "change its previous rulings in the guardianship proceeding." Laura testified the lawsuits were filed "for the purpose of providing an additional basis for seeking recusal" and "as part of a plan … to seek a more favorable venue and a different judge in hopes of improving their chances of favorable rulings." The probate court had the inherent authority to assess sanctions against Ross, Laura, and Brittany to "deter, alleviate and counteract [their] bad faith abuse of the judicial process" and protect the effectiveness of judicial functions and the dignity, independence, and integrity of the judiciary. *In re H.M.S.*, 349 S.W.3d 250, 256 (Tex. App.—Dallas 2011, pet. denied) (citing *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 399 (Tex. 1979)).

We therefore hold the probate court had jurisdiction to assess sanctions against Ross, Laura and Brittany based on their conduct in the adoption proceedings and for their bad faith abuse of the judicial process by filing the Second Recusal Motion. Appellants cite no authority requiring us to hold to the contrary. We overrule appellants' fourth issue.

### *Sanctions Against Attorney Phil Ross*

In appellants' last issue, Ross asserts his actions on behalf of Thrash, Laura, and Brittany were not vexatious but merely "zealous advocacy," and his actions were protected by the defense of "attorney immunity."

Ross claims he is entitled to the defense of attorney immunity because his actions, even if labeled wrongful or fraudulent, were within the scope of his legal representation of Laura and Brittany and advocacy on behalf of Thrash's best interests. Attorney immunity is an affirmative defense that shields an attorney from civil liability to non-clients based on the attorney's actions during representation of a client. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481-82 (Tex. 2015). "Even conduct that is 'wrongful in the context of the underlying suit' is not actionable if it

is 'part of the discharge of the lawyer's duties in representing his or her client.'" *Id.* at 481. The defense applies in the context of a civil lawsuit against the attorney by a third party; it does not shield an attorney in a sanctions proceeding. *Id*. at 482 (noting that other mechanisms are in place to discourage and remedy an attorney's wrongful or fraudulent conduct such as sanctions, contempt, and attorney disciplinary proceedings). Ross is not entitled to immunity from the sanctions assessed against him.

Ross also argues he was merely acting as a zealous advocate for Thrash's best interests and insists Thrash had the right to retain Ross as his personal attorney notwithstanding the adjudication of incapacity. Ross asserts "the plain language" of section 1202.103(a) of the Estate Code provides Thrash with the "statutory right to retain counsel" and he (Ross) acted in good faith when he repeatedly asserted his right to represent Thrash under a signed contract. *See* TEX. EST. CODE ANN. § 1202.103(a) ("A ward may retain an attorney for a proceeding involving the complete restoration of the ward's capacity or modification of the ward's guardianship."). The plain text of the statute limits a ward's right to retain counsel to either a complete restoration proceeding or a modification proceeding, neither of which were commenced in Thrash's case prior to the sanctions hearing. *Id.* As the trial court noted on the record several times, a proceeding to restore full capacity could not be initiated before the first anniversary of Thrash's guardianship. *See id.* § 1202.055. Ross also advocated for appointment of an attorney ad litem to represent Thrash, which would have been required in a modification proceeding; however, no petition to modify the guardianship was filed prior to the sanctions hearing. TEX. EST. CODE ANN. § 1202.101 (requiring the court to appoint an attorney ad litem to represent a ward in a complete restoration or modification proceeding). The trial court explained on the record that it would go "step by step" and instructed its investigator to visit with Thrash and prepare a report on whether the circumstances surrounding his mental incapacity had changed. The court would consider whether

to appoint an attorney ad litem for Thrash after receiving the report; the court later stated on the record that the report was "not favorable" to Thrash's capacity.

Ross also relies on the Bill of Rights for Persons Under Guardianship codified in section 1151.351 of the Estate Code. TEX. EST. CODE ANN. § 1151.351. The statute provides that a person under a guardianship retains "all the rights, benefits, responsibilities, and privileges granted by the constitution and laws of this state and the United States, except where specifically limited by a court-ordered guardianship or where otherwise lawfully restricted." *Id.* § 1151.351(a); *id.* § 1151.351(b) (listing twenty-five specific rights a ward retains "unless limited by a court"). Ross contends that because the Final Guardianship Order did not expressly prohibit Thrash from obtaining his own attorney, it did not "specifically limit" Thrash's right to retain counsel. We disagree. The Final Guardianship Order did specifically limit Thrash's rights by expressly finding that he lacked the mental capacity to enter into a contract, which includes hiring an attorney. Finally, Ross appears to argue the trial court violated the Bill of Rights when it struck the pleadings filed by Ross on behalf of Thrash. Again, we disagree because Ross was not authorized to represent Thrash due to his lack of capacity to contract. Further, the order striking the pleadings was the subject of the appeal in *Thrash #3*. *See Thrash #3*, 610 S.W.3d at 78.

Because Ross is not entitled to "attorney immunity" from the sanctions imposed against him and was not authorized to represent Thrash in the guardianship proceeding, we overrule appellants' fifth issue.

### *Sufficiency of the Evidence to Support Sanctions Findings*

Appellants use language referring to sufficiency of the evidence within some of their arguments under the various issues. In particular, they assert that some of the findings are against the great weight of the evidence because their acts and omissions were based on their advocacy for Thrash's best interests. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (factual sufficiency

- 23 -

standard). However, as noted above, appellants do not contest the court's findings of fact that they engaged in the acts and omissions detailed in the Sanctions Order. Appellants' argument that they were advocating for Thrash is not a challenge to the sufficiency of the evidence, but rather an explanation of appellants' intent and reason or excuse for the acts and omissions. As the sole factfinder at the sanctions hearings, the trial court was entitled to evaluate the witnesses' credibility and believe all or none of their statements that they were not acting out of self-interest but in Thrash's best interests. *Lowery v. Sanders*, 666 S.W.2d 226, 233 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.). To the extent any of appellants' arguments can be construed as true sufficiency challenges, we hold the voluminous record contains legally and factually sufficient evidence to support all of the trial court's findings in the Sanctions Order.[5]

## CONCLUSION

Based on the foregoing reasons, we affirm the trial court's May 29, 2019 order imposing sanctions on Ross, Laura and Brittany. We dismiss the appeal of Billy Duncan as Next Friend of Thrash for lack of jurisdiction.

Liza A. Rodriguez, Justice

---

[5] Appellants' brief contains citations to Appendix G which is the transcript of a Bill of Exceptions and does not constitute evidence admitted at any hearing.