

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00598-CV

**IN THE MATTER OF THE GUARDIANSHIP OF** Carlos Y. **BENAVIDES**, Jr.,
an Incapacitated Person

From the County Court at Law No. 1, Webb County, Texas
Trial Court No. 2011-PB6–000081-L2
Honorable Hugo Martinez, Judge Presiding

Opinion by:     Adrian A. Spears II, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Adrian A. Spears II, Justice
                H. Todd McCray, Justice

Delivered and Filed: April 30, 2026

AFFIRMED

This appeal arises from a proceeding in the administration of a guardianship. The trial court appointed Linda Cristina Benavides Alexander as guardian of the person and estate of her father, Carlos Y. Benavides, Jr. Thereafter, Linda filed an application to establish an estate/transfer plan, which the trial court granted.

Carlos's wife, Leticia R. Benavides, appeals from the order granting Linda's application to establish an estate/transfer plan. On appeal, Leticia argues: (1) the trial court erred by concluding she lacked standing to participate in the estate/transfer plan proceeding; (2) the evidence is legally and factually insufficient to support the estate/transfer plan order; (3) the trial court erred by

denying her affirmative defenses; and (4) the trial court erred by failing to file findings of fact and conclusions of law and rule on her special exceptions and the admissibility of her exhibits. We affirm.

## BACKGROUND

Linda was appointed successor guardian of Carlos's person and estate on October 19, 2016. Four years later, Linda filed an application for permission to establish an estate or other transfer plan to minimize the income, estate, inheritance, and other taxes payable from Carlos's estate as authorized by Chapter 1162 of the Texas Estates Code.

Linda's first amended application sought to transfer $9.22 million of Carlos's property and assets while reserving approximately $22 million for Carlos's care. Linda proposed gifting or transferring property from the guardianship estate for the benefit of Carlos's descendants, including Linda, either in trust or outright. She proposed that these gifts or transfers be taken from Carlos's sole and separate property to fund three dynasty trusts for Carlos's three children and their descendants. Linda alleged her proposed estate/transfer plan was consistent with Carlos's intentions because it did not conflict with a will he signed on May 20, 1986.[1]

Linda provided notice of her estate/transfer plan application to Carlos's wife, Leticia, and the trial court set the application for hearing. On the morning of the hearing, Leticia filed a response contesting the application on the merits and asserting the affirmative defenses of lack of capacity and res judicata.

---

[1]Linda also cited an unsigned draft will allegedly prepared for Carlos in March 2002, which named his three adult children as beneficiaries of his estate. We do not consider the unsigned draft will in analyzing the complaints presented in this appeal.

On September 4, 2020, the trial court held a hearing on the estate/transfer plan application.[2] Leticia fully participated in the hearing. The only witness to testify at the hearing was Dr. Christopher B. Ticknor, a medical doctor who was also board certified in psychiatry. Dr. Ticknor explained that Carlos, who had been diagnosed with Parkinson's disease and Alzheimer's disease, suffered from severe dementia. Dr. Ticknor first evaluated Carlos in 2012. Between 2013 and 2019, Dr. Ticknor examined Carlos five or six times. In Dr. Ticknor's opinion, Carlos was completely incapacitated when he first evaluated him and he remained completely incapacitated at the time of the hearing. Dr. Ticknor further opined that Carlos's incapacitation was irreversible and his condition would not improve during his lifetime.

During the hearing, Linda argued that her proposed estate/transfer plan was consistent with Carlos's intentions concerning the distribution of his property as demonstrated by his 1986 will, which devised certain property to Carlos's wife at the time, Rosalinda Q. Benavides, and named his three children the beneficiaries of the rest and residue of his estate. Linda also argued that even if the trial court could not ascertain Carlos's intentions, it should grant her application based on the presumption that Carlos favored the proposed estate/transfer plan because it would reduce in the incidence of the various forms of taxation. Linda explained the tax benefits to the trial court and assured the trial court that her proposed plan was "a commonly done plan" and it was "what [wa]s being done for families in [Carlos's] financial situation."

In opposing the application, Leticia claimed that the 1986 will did not express Carlos's intentions regarding the disposition of his estate because Carlos had subsequently executed a will in 2011 that revoked all his prior wills and named Leticia as his sole beneficiary. Leticia further urged the trial court to deny the estate/transfer plan application because Linda lacked capacity to

---

[2]On the same day, the trial court granted Linda's petition for divorce, dissolving the marriage between Carlos and Leticia. The final decree of divorce was vacated by the Texas Supreme Court.

file the application. Leticia presented three theories to support her lack of capacity defense. First, she argued that the order appointing Linda as successor guardian was void because the trial judge who appointed her was constitutionally disqualified based on his "illegal personal interest" in the case. Second, she argued that Linda lacked capacity to bring the application because Carlos signed a document expressly and unequivocally disqualifying Linda from serving as his guardian. Third, she argued that Linda lacked capacity to file the estate/transfer plan application because Linda possessed "conflicts of interests" and committed financial misdeeds as guardian, such as "self-dealing" and "misconduct and mismanagement" of the guardianship estate.

On September 25, 2020, the trial court signed an order granting Linda's first amended application to establish an estate/transfer plan, which authorized Linda to take multiple actions. First, the estate/transfer plan order authorized Linda to settle three separate irrevocable trusts or "dynasty trusts" for each of Carlos's three children and their descendants. Second, it authorized Linda to gift, as equally as possible, all or part of Carlos's separate property interests in multiple properties to the three dynasty trusts or to the children outright for the purpose of using Carlos's remaining gift tax exemption. Third, it authorized Linda to make gifts to Carlos's descendants in 2020. Fourth, it authorized Linda to allocate Carlos's unused generation-skipping transfer exemption amounts to the dynasty trusts, gifts, or other transfers for the purpose of reducing future generation-skipping transfer taxes. Finally, it directed Linda to report the actions taken on her next annual account.

The trial court subsequently signed orders stating that it would not address Leticia's objections, special exceptions, and request for findings of fact and conclusions of law because of her lack of standing.

Leticia timely filed a notice of appeal.[3] After this appeal was briefed, Leticia moved to abate it pending resolution of another appeal, appellate cause number 04-20-00599-CV, which was an appeal from a decree dissolving the marriage between Carlos and Leticia. Although Linda opposed the motion to abate, we granted the motion and abated this appeal.

On February 8, 2023, we affirmed the decree of divorce. *In re Marriage of Benavides*, 692 S.W.3d 526 (Tex. App.—San Antonio 2023), *rev'd*, 712 S.W.3d 561 (Tex. 2025). Thereafter, Leticia filed a petition for review in the Texas Supreme Court, which was granted. On April 25, 2025, the Texas Supreme Court vacated the trial court's final decree of divorce. *See In re Marriage of Benavides*, 712 S.W.3d at 580.

Leticia subsequently filed a motion to lift the abatement, which we granted. We reinstated this appeal on our docket and set it for submission on briefs.

**MOTION TO DISMISS APPEAL/LETICIA'S STANDING**

As a threshold matter, we address Linda's motion to dismiss this appeal, which coincides with Leticia's first issue in her brief.[4] Linda argues this appeal must be dismissed for lack of jurisdiction because Leticia did not have standing to challenge the application for authority to establish an estate/transfer plan and, as a consequence, she has no standing to challenge the order granting Linda's estate/transfer plan application on appeal. Leticia counters that she did in fact have standing to challenge the guardian's estate plan under section 1055.001 of the Texas Estates Code.

---

[3]Carlos passed away on December 23, 2020, four months after the probate court signed the estate/transfer plan order.

[4]Leticia states her first issue as follows: "Does Leticia have standing to challenge the trial court's order granting [Linda] authority to establish a transfer or estate plan when [s]ection 1055.001 of the Estates Code provides that 'any person' has the right to appear and contest a 'guardianship proceeding'?"

Whether a party has standing to participate in a guardianship proceeding is a question of law that we review de novo. *In re Guardianship of Benavides*, No. 04-19-00801-CV, 2020 WL 7365454, at *4 (Tex. App.—San Antonio Dec. 16, 2020, no pet.). In a guardianship proceeding, multiple final judgments that dispose of "certain discrete issues" can occur. *Id*. at *3. Because guardianship proceedings are divided into separate discrete phases, standing must be established at each phase of the proceedings. *Id*. Furthermore, when standing is conferred by statute, the statute itself serves as the proper framework for a standing analysis. *Id*. at *4.

In support of her motion to dismiss this appeal, Linda argues that because her estate plan application was based on section 1162.001 of the Texas Estates Code, Leticia's standing must be analyzed under section 1162.003 of the Texas Estates Code. We disagree. Section 1162.003, entitled "Notice of Application for Establishment of Estate or Other Transfer Plan," identifies the individuals who must be sent notice of an application for the establishment of estate or other transfer plan; it does not address standing. *See* TEX. ESTATES CODE § 1162.003.[5]

We conclude Leticia's standing for this phase of the guardianship proceeding is governed by section 1055.001 of the Texas Estates Code. Section 1055.001 of the Texas Estates Code, entitled "Standing to Commence or Contest Proceeding," confers standing in the estate plan matter. It states: "Except as provided by Subsection (b), any person has the right to . . . appear and contest a guardianship proceeding." TEX. ESTATES CODE § 1055.001(a). The limited exception contained in the statute—subsection (b)—provides that a person who has an interest adverse to a proposed

---

[5]A person who makes an application to the court under Section 1162.001 shall send notice of the application by a qualified delivery method to:

    (1) all devisees under a will, trust, or other beneficial instrument relating to the ward's estate;
    (2) the ward's spouse;
    (3) the ward's dependents; and
    (4) any other person as directed by the court.

TEX. ESTATES CODE § 1162.003.

ward or incapacitated person may not file an application to create a guardianship, a contest to the creation of a guardianship, a contest to the appointment of a guardian, or a contest to an application for complete restoration of a ward's capacity or modification of a ward's guardianship. *Id*. § 1055.001(b).[6]

The underlying guardianship proceeding did not involve an application to create a guardianship, a contest to the creation of a guardianship, a contest to the appointment of a guardian, or a contest to an application for complete restoration of a ward's capacity or modification of a ward's guardianship. *See id*. Under the plain meaning of the statute, Leticia was not deprived of standing to contest an application to establish an estate/transfer plan. *See id*. § 1055.001(a).

We hold that Leticia had standing to contest Linda's application for authority to establish an estate/transfer plan. *In re Guardianship of Benavides*, 2020 WL 7365454, at \*5 (holding Leticia had standing to appear in guardianship proceeding to object to guardian's petition for instruction regarding distributions from Benavides Family Mineral Trust). We deny Linda's motion to dismiss this appeal for lack of jurisdiction.

## STANDARD OF REVIEW

We review orders in guardianship proceedings for an abuse of discretion. *In re Guardianship of A.E.*, 552 S.W.3d 873, 876 (Tex. App.—Fort Worth 2018, no pet.); *McGrede v. Coursey*, 131 S.W.3d 189, 195 (Tex. App.—San Antonio 2004, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles, such that its ruling was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). Legal and factual sufficiency of the evidence are not independent, reversible grounds of error in guardianship proceedings; instead, they are factors we consider in determining if the trial court abused its

---

[6]We apply the version of section 1055.001(b) that was in effect when the trial court made its ruling.

discretion. *In re Guardianship of Thrash*, No. 04-19-00104-CV, 2019 WL 6499225, at *5 (Tex. App.—San Antonio Dec. 4, 2019, pet. denied). A trial court does not abuse its discretion when it bases its decision on conflicting evidence, and its decision is supported by some evidence of a substantive and probative character. *In re Guardianship of N.P.*, No. 02-19-00233-CV, 2020 WL 7252322, at *6 (Tex. App.—Fort Worth Dec. 10, 2020, pet. denied).

In a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re Marriage of Thrash*, 605 S.W.3d 224, 230 (Tex. App.—San Antonio 2020, pet. denied). As the factfinder, the trial court resolves any conflicts in the evidence. *Id*. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then the factfinder must be allowed to do so, and we may not substitute our judgment for that of the factfinder's. *Id*.

"In guardianship proceedings especially, the heavy responsibility for determining the best resolution of fundamental and emotional issues lies necessarily within the trial court's sound discretion." *In re Thetford*, 574 S.W.3d 362, 380 (Tex. 2019). "An appellate court's review of a trial court's management of guardianship proceedings must be singularly mindful of the trial court's unique opportunity and responsibility to assess the circumstances presented." *Id*.

### CHAPTER 1162 OF THE TEXAS ESTATES CODE

When a person is placed under a guardianship, chapter 1162 of the Texas Estates Code, titled "Tax-Motivated, Charitable, Nonprofit, and Other Gifts," authorizes the trial court to issue an order allowing a guardian to establish an estate plan designed to minimize taxes for a ward. *In re Estate of Wiatrek*, No. 04-20-00391-CV, 2022 WL 3219868, at *2 (Tex. App.—San Antonio Aug. 10, 2022, no pet.). Section 1162.001 of the Texas Estates Code provides:

**Authority to Establish Estate or Other Transfer Plan**

On application of the guardian of the estate or any interested person, after the posting of notice and hearing, and on a showing that the ward will probably remain incapacitated during the ward's lifetime, the court may enter an order that authorizes the guardian to apply the principal or income of the ward's estate that is not required for the support of the ward or the ward's family during the ward's lifetime toward the establishment of an estate plan for the purpose of minimizing income, estate, inheritance, or other taxes payable out of the ward's estate, or to transfer a portion of the ward's estate as necessary to qualify the ward for government benefits and only to the extent allowed by applicable state or federal laws, including rules, regarding those benefits. On the ward's behalf, the court may authorize the guardian to make gifts or transfers described by this section, outright or in trust, of the ward's property to or for the benefit of:

(1) an organization to which charitable contributions may be made under the Internal Revenue Code of 1986 and in which it is shown the ward would reasonably have an interest;

(2) the ward's spouse, descendant, or other person related to the ward by blood or marriage who is identifiable at the time of the order;

(3) a devisee under the ward's last validly executed will, trust, or other beneficial instrument, if the instrument exists; and

(4) a person serving as guardian of the ward, if the person is eligible under Subdivision (2) or (3).

TEX. ESTATES CODE § 1162.001.

The person making an application to the trial court under section 1162.002 is required to outline the proposed estate or transfer plan and state all the benefits that are to be derived from the plan. *See id*. § 1162.002(a). "The application must indicate that the planned distribution is consistent with the ward's intentions, if the ward's intentions can be ascertained." *Id*. § 1162.002(b). "If the ward's intentions cannot be ascertained, the ward will be presumed to favor reduction in the incidence of the various forms of taxation." *Id*.

Here, the trial court's order reflects that it is based on the first ground contained in section 1162.002(b), that is, that the estate/transfer plan is consistent with the ward's intentions. The order

expressly states that "the requested estate and transfer plan is consistent with and does not conflict with Carlos's will dated May 20, 1986." Significantly, the order makes no mention of the second ground—that the trial court applied a presumption in favor of the reduction of taxes because Carlos's intentions could not be ascertained.

On appeal, Leticia challenges the legal and factual sufficiency of the evidence to support the ground stated in trial court's order, arguing the trial court was precluded from relying on the 1986 will to ascertain Carlos's intentions. First, Leticia argues the trial court could not have relied on the 1986 will because Linda failed to offer it into evidence at the hearing. Second, Leticia argues that even if the 1986 will was admitted into evidence, the trial court could not have relied on it because it was superseded by Carlos's 2011 will, which expressly revoked all prior wills.

**Was the 1986 Will Offered and Admitted into Evidence?**

To support her contention that the trial court could not rely on the 1986 will, Leticia argues that it was never "offered" into evidence at the hearing. Specifically, Leticia argues: "[Linda] did not offer Carlos's purported 1986 . . . will[] into evidence at the evidentiary hearing, nor was there any evidence presented at the hearing about the contents" of the 1986 will. However, the record shows otherwise.

Early in the hearing, the 1986 will was marked as exhibit one. After it was marked, Leticia objected to its admission on the basis that Carlos had executed a subsequent will in 2011, in which he stated he was revoking his prior wills. Linda responded to Leticia's objection by stating that she was not offering the 1986 will at that time. Later in the hearing, the following transpired:

Court:      What was No. 1?

Linda:      No. 1 was the last will and testament of Carlos Y. Benavides Jr. It's a copy. It was signed in 1986. We do have the original in possession of the guardian. *We only want to enter as evidence a copy.*

Court:      But you never offered it as evidence. When you asked me to mark it as Exhibit 1, I think [Leticia] objected, and then you said you only wanted it marked—yes marked as Exhibit 1.

Linda:      I think the objection was to the CV.

Leticia:    We also objected to the will. [Linda] said [s]he wasn't offering it.

Court:      Yes. All right. That's fine.

(Emphasis added). At the end of the hearing, the trial court advised the parties that it was "going to review everything that was submitted to the Court." After the hearing, the trial court signed an order stating that "the requested estate and transfer plan is consistent with and does not conflict with Carlos's will dated May 20, 1986."

Offering an exhibit into evidence requires "no magic or exclusive words." *Robertson Truck Lines Inc. v. Hogden*, 487 S.W.2d 401, 402 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.); *see Holman v. State*, No. 07-96-0066-CR, 1997 WL 23061, at *1 (Tex. App.—Amarillo Jan. 22, 1997, pet. ref'd) (not designated for publication) (noting that an offer of evidence "is not done through the invocation of any specific magical word."). While the better practice is for a litigant to "offer" an exhibit into evidence and to secure the trial court's statement that the exhibit is "admitted," such a practice is not required. *See Gee v. Lewisville Mem. Hosp., Inc.*, 849 S.W.2d 458, 461 (Tex. App.—Fort Worth 1993, writ denied) (concluding affidavits were admitted into evidence when affidavits were identified for the court, litigant stated it was tendering affidavits into evidence, and litigant recited parts of affidavits into evidence without objection); *Bullock v. Foster Cathead Co.*, 631 S.W.2d 208, 211 (Tex. App.—Corpus Christi–Edinburg 1982, no writ) ("While a formal presentment and acceptance of this documentary exhibit would have been preferable, the record shows that it was in fact offered and received in evidence, precluding any complaint at this time that it was not in evidence.").

Here, the record reflects some initial uncertainty regarding whether Linda intended to offer the 1986 will into evidence. However, during the hearing, she identified the document, described it as Carlos's will, and expressly stated "we only want to enter as evidence a copy," thereby tendering it to the trial court. Although the trial court did not expressly state that it was admitting the will into evidence, it stated it was "going review everything that was submitted," and its order relied on the 1986 will. Although Leticia objected, the trial court did not rule on the objection, and Leticia did not obtain or insist on a ruling. Thus, the record confirms that the 1986 will was offered by Linda and received by the trial court. *See Gee*, 849 S.W.2d at 461; *Bullock*, 631 S.W.2d at 211. After considering the entire record, we conclude the 1986 will was admitted into evidence.[7]

**Did the Texas Estates Code Preclude Consideration of the 1986 Will?**

Next, Leticia argues that even if the 1986 will was admitted into evidence, the trial court was precluded from considering it because it was revoked by the 2011 will. TEX. ESTATES CODE § 253.002 (providing a will may be revoked by a subsequent will executed with like formalities). At the hearing, Leticia explained her position as follows: "Obviously 2011 is after 1986, so [Carlos's] 2011 will, by operation of law, revoked the 1986 will. And if the 2011 will is valid, everything goes to Leticia and they're not going to be able to get any of the benefits of the estate planning or the estate assets they're asking for here today." Leticia added: "Since the 2011 will is presumed to be valid, it has never been revoked by Carlos, that will trumps all prior wills."

Contrary to Leticia's assertions, the 2011 will did not automatically revoke the 1986 will. "To establish revocation [under section 253.002's predecessor statute] . . . it must be shown that the testat[or] was of sound mind when []he executed the subsequent instrument, that []he intended

---

[7]Contrary to Leticia's argument, the record also shows that the contents of the 1986 will were made known to the trial court during the hearing. Linda provided the trial court with a binder that contained multiple exhibits, including a copy of the 1986 will. Additionally, Linda informed the trial court of the 1986 will's contents without any objection from Leticia.

to revoke h[is] original will and that the revoking instrument was executed in accordance with the prescribed formalities." *Lowery v. Saunders*, 666 S.W.2d 226, 237 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.). "The issue of whether a revoking will is executed with like formalities is ordinarily a question of fact to be determined by the fact finder." *In re Rogers*, 895 S.W.2d 375, 378 (Tex. App.—Tyler 1994, writ denied) "Where the proponent of a revoking instrument meets h[er] burden of proving that the subsequent instrument was executed with the requisite formalities, [s]he must further prove that the subsequent instrument was executed at a time when the testat[or] was of sound mind and disposing memory." *Lowery*, 666 S.W.2d at 237.

A trial court may generally take judicial notice of its own records in a case involving the same subject matter between the same parties. *In re Shell E & P, Inc.*, 179 S.W.3d 125, 130 (Tex. App.—San Antonio 2005, orig. proceeding); *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 539 (Tex. App.—San Antonio 2004, pet. denied). A trial court is not required to announce that it is taking judicial notice, and it may be presumed to have taken notice of its own records. *Sierad v. Barnett*, 164 S.W.3d 471, 481 (Tex. App.—Dallas 2005, no pet.). Furthermore, "[a] probate proceeding consists of 'a continuing series of events,' and later decisions regarding administration of an estate or guardianship of a ward necessarily may be based on earlier decisions in the proceeding." *In re Guardianship of Macer*, 558 S.W.3d 222, 226 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

At the hearing, Linda asked the trial court to take judicial notice of its prior guardianship rulings. We may presume the trial court took judicial notice of its prior rulings even though it did not say it was doing so. *See Sierad*, 164 S.W.3d at 481. The trial court's own records included its prior order appointing a temporary guardian for Carlos on October 14, 2011. Carlos signed the 2011 will on September 14, 2011, which was only one month before he was placed under a

temporary guardianship. Additionally, the trial court's records showed that in 2012 Linda filed a motion to show authority, asserting that Carlos did not have the capacity to hire the lawyer who drafted the 2011 will. The trial court granted the motion to show authority, reciting in its order that the lawyer who drafted the 2011 failed to prove that Carlos had the capacity to hire a lawyer when he signed the 2011 will and other accompanying estate planning documents. Leticia appealed this order, and we affirmed it on appeal. *In re Guardianship of Benavides*, 403 S.W.3d 370, 375–77 (Tex. App.—San Antonio 2013, pet. denied). Furthermore, at the hearing, Linda presented evidence about the severity and duration of Carlos's incapacitation. Dr. Ticknor testified that he first observed an examination of Carlos in 2012 and he opined that Carlos was completely incapacitated at that time, which was near the time the 2011 will was signed. Based on the evidence in these proceedings and its rulings in past guardianship proceedings, the trial court was aware of the severity and duration of Carlos's incapacitation.

Although the 2011 will contains language that Carlos "hereby expressly revoke[s] all Wills and Codicils heretofore [] made," the trial court was not required to find that the 2011 will revoked the 1986 will. *See Lowery*, 666 S.W.2d at 237 (providing that, to establish that a subsequent will revokes a prior will, it must be shown that the testator was of sound mind when he executed the subsequent instrument, that he intended to revoke his original will, and that the revoking instrument was executed in accordance with the prescribed formalities).

We reject Leticia's argument that the trial court was precluded from considering the 1986 will because it was revoked by the 2011 will. Both the trial court's own records and the evidence presented at the hearing cast doubt upon whether Carlos was "of sound mind and disposing memory" when he signed the 2011 will. When reviewing the trial court's management of guardianship proceedings, we are required to be "mindful of the trial court's unique opportunity

and responsibility to assess the circumstances presented." *In re Thetford*, 574 S.W.3d at 380. We conclude the trial court could have reasonably determined the evidence did not establish that the 2011 will operated to revoke the 1986 will. *See In re Marriage of Thrash*, 605 S.W.3d at 230.

Because the 1986 will was admitted into evidence and the trial court was not required to conclude that the 2011 will revoked the 1986 will, the trial court could have properly considered the 1986 will in ascertaining Carlos's intentions under section 1162.002(b) of the Texas Estates Code.

**Does the Estate/Transfer Plan Order Constitute an Abuse of Discretion?**

The record contained conflicting evidence regarding Carlos's intentions. Both the 1986 will and the 2011 will were admitted into evidence. In the 1986 will, Carlos left his property to his children. In the 2011 will, Carlos left his property to Leticia. A trial court does not abuse its discretion when it bases its decision on conflicting evidence, and its decision is supported by some evidence of a substantive and probative character. *See In re Guardianship of N.P.*, 2020 WL 7252322, at \*6. In the 1986 will, Carlos expressed his intention to leave the rest, residue, and remainder of his property to his three children in equal undivided parts. Linda's estate/transfer plan application was consistent with this intention, proposing to gift or transfer a portion of Carlos's property in equal amounts to Carlos's children to minimize taxes. The 1986 will was some evidence that the proposed estate/transfer plan was consistent with Carlos's intentions regarding the distribution of his property. Based on the evidence presented, we cannot say that the trial court's estate/transfer plan order constitutes an abuse of discretion.

Linda also directs our attention to *Cowan v. Cowan*, 254 S.W.2d 862 (Tex. App.—Amarillo 1952, no writ). In *Cowan*, a mother's children sued to invalidate her will while she was still living, asserting that the mother lacked testamentary capacity when she signed her will. *Id*. at 862-83. The

court of appeals concluded that the trial court erred by deciding the matter of the mother's testamentary capacity before she died explaining that until a person dies "there cannot be, in its truest sense, a will." *Id*. at 865. However, *Cowan* is distinguishable. Unlike the situation in *Cowan*, the trial court here was not asked to invalidate the 2011 will and it did not do so. The trial court merely determined, in the context of the administration of a guardianship and based on its long-time experience and familiarity with the ward and the parties, that the 1986 will was indicative of Carlos's intentions regarding the distribution of his property.

We conclude the trial court did not abuse its discretion by granting Linda's application for an estate/transfer plan.

## LACK OF CAPACITY DEFENSES

On appeal, Leticia argues the trial court should have sustained her objections to the estate/transfer plan application based on Linda's lack of "legal authority" or "capacity." Leticia asserted in the trial court that Linda lacked legal authority or capacity because: (1) the order appointing Linda as guardian was issued by a constitutionally disqualified judge, (2) Carlos signed a document disqualifying her from serving as his guardian, and (3) Linda had impermissible conflicts of interest and engaged in misconduct.

Capacity is a procedural issue centered on a party's personal qualifications to litigate. *Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845, 848-49 (Tex. 2005). A party's lack of capacity is an affirmative defense that must be pleaded and proven by the opposing party. TEX. R. CIV. P. 93; *see Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988). In this case, Leticia had the burden of proving that Linda lacked capacity to file the application. *See Christi Bay Temple v. GuideOne Specialty Mut. Ins. Co.*, 330 S.W.3d 251, 253 (Tex. 2010).

Linda acknowledges in her appellate brief that her "capacity arguments are virtually [the same as] the capacity arguments she raised in her opening brief in [Cause] No. 04-20-00599-CV" and that "she relies on the same evidence and arguments" in both cases. We agree that the legal authority/capacity arguments made in this appeal are the same as the arguments we addressed in Cause No. 04-20-00599-CV, the appeal from the decree of divorce. In Cause No. 04-20-00599-CV, we held that (1) Leticia's evidence did not raise a genuine issue of material fact concerning the constitutional disqualification of the judge who appointed Leticia to be Carlos's guardian; (2) Carlos's disqualification declaration did not raise a genuine issue of material fact as to Linda's lack of capacity; and (3) Leticia's evidence did not raise a genuine issue of material fact with regard to self-dealing, conflicts of interest, mismanagement, or misconduct by Linda. *In re Marriage of Benavides*, 692 S.W.3d at 543-45.

While the Texas Supreme Court ultimately reversed our judgment in Cause No. 04-20-00599-CV, it did so on different grounds. *In re Marriage of Benavides*, 712 S.W.3d at 580 (vacating divorce decree based on lack of finding that divorce was in ward's best interest and would protect and promote his well-being). We find our reasons for rejecting Leticia's capacity arguments in Cause No. 04-20-00599-CV to be persuasive and we adopt them in the instant appeal. *See In re Marriage of Benavides*, 692 S.W.3d at 543-45. We conclude Leticia failed to prove that Linda lacked the legal authority or capacity to file the estate/transfer plan application.

### SOLE AND SEPARATE PROPERTY DETERMINATION

Leticia also challenges the trial court's determination that certain assets—Benavides Management Company L.L.C., Benavides Family Mineral Trust, and Chapote Ranch—were Carlos's sole and separate property. Leticia asserts the trial court's characterization of these properties as Carlos's sole and separate property was barred by res judicata because this claim

could have been litigated in the jury trial held in the 49th Judicial District Court in cause number 2012-CVQ-00161-D1, which was an interpleader suit filed by Texas Community Bank.

"Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Tr. Corp. ex. Rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). Res judicata is an affirmative defense. *In re Estate of Spiller*, No. 04-22-00050-CV, 2023 WL 2733403, at *4 (Tex. App.—San Antonio Mar. 31, 2023, no pet.). The party asserting res judicata has the burden of proving each of its elements. TEX. R. CIV. P. 94; *see Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 706 (Tex. 2021).

The elements of res judicata are: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action. *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). We focus on the third element— whether the same claim could have been raised in the interpleader suit filed in the district court.

In determining if a claim or cause of action could have been determined in a prior suit, Texas follows the "transactional approach." *Barr*, 837 S.W.2d at 631. Under the transactional approach, "a subsequent suit is barred if it arises out of the same subject matter as the prior suit, and that subject matter could have been litigated in the prior suit." *Daccach*, 217 S.W.3d at 449. Determining the scope of the "subject matter" or "transaction" of the prior suit requires "an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action." *Id*. A transaction is determined pragmatically, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient

trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." *Id*.

In the trial court, Leticia argued that res judicata required Linda to litigate her claims about the characterization of the properties in the previous interpleader suit. However, the only documents Leticia provided to the trial court in support of her res judicata defense were the jury charge and the final judgment from the interpleader suit. Leticia did not provide a copy of the pleadings. Without these pleadings, the trial court could not have determined if the claim in Linda's estate/transfer plan application arose from the same transaction as the claims in the interpleader suit, that is, whether they were related in time, space, origin, or motivation; whether they formed a convenient trial unit; and whether their treatment as a trial unit conformed to the parties' expectations. *See In re Marriage of Benavides*, 692 S.W.3d at 540 (concluding lack of pleadings from interpleader suit precluded court from determining if claims could have been raised in the prior action). We conclude that Leticia failed to prove her res judicata defense.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The record shows Leticia timely filed a request for findings of fact and conclusions of law and a notice of past due findings of fact and conclusions of law. *See* TEX. R. CIV. P. 296, 297. On appeal, Leticia argues that the trial court's failure to file findings of fact and conclusions of law was harmful because she had to guess how the trial court reached its ruling.

When a trial court fails to file findings of fact and conclusions of law after a proper request, the failure is presumed harmful unless the record affirmatively shows the appellant suffered no injury. *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989). "[I]f only one issue is presented to the trial court, a complainant does not usually have to guess at the reasons for the trial court's ruling." *Webb v. Diversegy, LLC*, No. 05-17-01258-CV, 2019 WL 1146707, at *4

(Tex. App.—Dallas Mar. 13, 2019, pet. denied). When the basis for the trial court's judgment is clear from the record and the absence of findings does not adversely impact the appellant's ability to prosecute her appeal, the failure to file findings of fact and conclusions of law is harmless. *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014); *Williams v. State*, 406 S.W.3d 273, 292 (Tex. App.—San Antonio 2013, pet. denied).

Here, the only issue before the trial court was whether the guardian's application for an estate/transfer plan should be granted. The trial court's order stated the ground on which it based its ruling. As a result, Leticia's ability to prosecute her appeal was not adversely impacted. We conclude that any error in failing to file findings of fact and conclusions of law was harmless. *See Pena*, 442 S.W.3d at 263; *Williams*, 406 S.W.3d at 292.

### SPECIAL EXCEPTIONS

Leticia next complains about the trial court's failure to rule on her special exceptions. We have reviewed Leticia's special exceptions and conclude they are meritless. A trial court's failure to rule on meritless special exceptions is harmless. *Cantu v. Pasadena Indep. Sch. Dist.*, No. 14-24-00747-CV, 2025 WL 2934048, at *3 (Tex. App.—Houston [14th Dist.] Oct. 16, 2025, no pet.); *Swinford v. Allied Fin. Co. of Casa View*, 424 S.W.2d 298, 301 (Tex. Civ. App.—Dallas 1968, writ dism'd) ("We have examined each of the special exceptions and find that the same are without merit so that any possible error on the part of the court in failing to pass upon the same would be harmless."); *see* TEX. R. APP. P. 44.1(a) (stating no civil judgment may be reversed on appeal unless error probably caused the rendition of an improper judgment or prevented the appellant from properly presenting the case to the appellate court). We conclude the trial court's failure to rule on Leticia's special exceptions was harmless. *See Cantu*, 2025 WL 2934048, at *3; *Swinford*, 424 S.W.2d at 301; TEX. R. APP. P. 44.1(a).

**ADMISSIBILITY OF EXHIBITS**

Leticia finally complains about the trial court's failure to rule on the admissibility of her exhibits. She asserts she was harmed by the trial court's failure to rule on the admissibility of her exhibits because they were "controlling on a material issue dispositive to the case—[Linda's] authority and capacity to act as Carlos's guardian."

In addressing Leticia's complaints about Linda's authority and capacity, we adopted the reasoning in our opinion in Cause No. 04-20-00599-CV, where we considered and analyzed the same exhibits that are the subject of the instant complaint. Accordingly, the trial court's failure to rule on the admissibility of Leticia's exhibits was harmless. *See* TEX. R. APP. P. 44.1(a).

**CONCLUSION**

The trial court's order establishing an estate/transfer plan pursuant to Chapter 1162 of the Texas Estates Code is affirmed.

Adrian A. Spears II, Justice